LEON BANKIER et al., Plaintiffs-Appellees and Cross-Appellants, v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHAMPAIGN, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—91—0286

Opinion filed February 20, 1992.—Rehearing denied March 31, 1992.

Thomas B. Cassidy, of Martin, Craig, Chester & Sonnenschein, of Chicago, and Gary R. Lietz, of Franklin, Flynn & Palmer, of Champaign, for appellant.

James A. Martinkus, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiffs Leon and Fela Bankier (Bankiers) filed a complaint against defendant First Federal Savings and Loan Association of Champaign (First Federal) alleging breach of contract by charging a prepayment penalty on a construction-permanent loan (count I), and consumer fraud pursuant to the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*) (counts II and III). The trial court granted summary judgment in favor of the Bankiers on count I of their complaint, *i.e.*, the prepayment penalty. The trial court granted summary judgment in favor of First Federal on counts II and III of the complaint, which alleged a violation of the Act and sought punitive damages. First Federal appeals the granting of summary judgment on count I, and the Bankiers cross-appeal the granting of summary judgment on counts II and III. We reverse in the former, *i.e.*, First Federal's appeal, and affirm in the cross-appeal.

The Bankiers are developers of commercial and residential real estate. In 1986, they entered into negotiations with First Federal for a construction-permanent first mortgage loan to finance the development of an apartment and commercial complex in Champaign, Illinois. On May 30, 1986, First Federal sent the Bankiers a letter (loan commitment letter) approving the construction-permanent first mortgage loan for $3,040,000.

The loan commitment letter contained the following paragraph regarding the term of the loan:

"2. *Loan Term*—The term of the construction loan will be 12 months. That is to say, construction must be completed and the construction portion of the construction-permanent loan must be closed within twelve months of the date the mortgage documents are executed. The permanent loan will be amortized over a period not to exceed 25 years."

Paragraph 6 of the loan commitment specified the following schedule of prepayment penalties:

"6. *Prepayment Penalties*—5% for years 1 through 10 of the loan.
4% for years 11 through 15 of the loan.
3% for years 16 through 20 of the loan."

The loan commitment letter did not define the term "loan" as used in paragraph 6.

On July 1, 1986, the Bankiers executed several documents relating to this loan. These documents are (1) the multifamily note (note); (2) the multifamily mortgage (mortgage); and (3) the construction loan agreement (agreement). The note provided for monthly installments of $32,944.69 commencing on August 1, 1987, with the final installment due August 1, 2007. The Bankiers were required to pay only accrued interest on sums advanced prior to August 1, 1987. The following schedule of prepayment penalties was an addition typed onto the bottom of the second page of the note:

> "Prepayment of the principal of this loan during the term of this loan shall be subject to the following penalties:
>
> Any prepayment of principal during the first ten years of this loan shall be assessed a prepayment charge of the 5% of the principal prepaid;
>
> Any prepayment of principal during years eleven through fifteen of this loan shall be assessed a prepayment charge of 4% of the principal prepaid;
>
> Any prepayment of principal during years sixteen through twenty of this loan shall be assessed a prepayment charge of 3% of the principal prepaid[.]"

Moreover, below the schedule of payments, the following paragraph appears:

> "The above-named Borrower acknowledges that the prepayment restrictions placed on this loan are a material part of the consideration for this loan and that the holder hereof has a business need to avoid payment of principal prior to the permitted prepayment date."

Leon Bankier's initials appear next to this paragraph indicating his acknowledgement of this paragraph, and he admitted in a deposition to signing his initials.

The mortgage referred to the provision in the note requiring monthly installments commencing on August 1, 1987, and ending on August 1, 2007. The mortgage made no reference to any prepayment penalties. The agreement provided for construction to be completed "within 365 working days" and for First Federal to disburse funds "from time to time during this period."

In June 1987, the Bankiers prepaid the loan. At this time, the construction on the project had been completed. The Bankiers notified First Federal of their desire to pay off the loan and requested figures therefor. First Federal provided those figures on June 30, 1987, and

included a prepayment penalty of $113,927.14. First Federal refused to release the mortgage on the property unless this amount was paid. Accordingly, the Bankiers issued two checks, one for the amount of the prepayment penalty, delivered "under protest," and one for the amount of funds disbursed plus interest through July 1, 1987. Thereafter, First Federal executed a release of the mortgage.

The Bankiers filed a two-count complaint on May 20, 1988, and thereafter amended their complaint to add a count for punitive damages under the Act. First Federal answered counts I and II of the complaint. On June 9, 1989, the Bankiers filed a motion for summary judgment. After amending their complaint to add count III, the Bankiers filed a second motion for summary judgment. On July 26, 1989, the trial court found a genuine issue of material fact existed and denied both motions for summary judgment.

Next, First Federal filed a motion for judgment on the pleadings or, alternatively, for reconsideration. The trial court confirmed its order denying summary judgment. However, the trial court granted First Federal's motion regarding counts II and III, finding no genuine issue of material fact existed and that, as a matter of law, no deceptive act or practice and no fraud had occurred to sustain a cause of action under the Act. The trial court granted summary judgment in favor of First Federal on counts II and III of the complaint.

On March 7, 1990, the Bankiers filed a motion for reconsideration of the trial court's granting of summary judgment to First Federal on counts II and III. This motion was denied on March 13, 1990. On January 23, 1991, First Federal filed a motion *in limine* or, alternatively, for reconsideration. The motion *in limine* sought to exclude evidence of the loan commitment letter and testimony of Dennis Mulvaney, one of First Federal's officers, regarding remarks and statements made prior to the execution of the note. The trial court denied the motion for reconsideration and took the motion *in limine* under advisement.

On its own motion, the trial court recalled the case for hearing on February 28, 1991. The trial court, after examining all the relevant documents, concluded these documents could have but one meaning: "a prepayment penalty is only to apply if the principal was prepaid during the 20 year term of the loan commencing with August 1, 1987." The trial court, therefore, granted summary judgment in favor of the Bankiers on count I of their complaint. First Federal appeals that order granting the Bankiers summary judgment on count I of their complaint. The Bankiers cross-appeal the trial court's order of March 13, 1990, granting summary judgment to First Federal on counts II and III of the complaint.

## I. The Prepayment Penalty

Summary judgment is properly granted if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) The materials on file are interpreted most favorably toward the nonmovant. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1308; *Harrison v. Sears, Roebuck & Co.* (1989), 189 Ill. App. 3d 980, 986-87, 546 N.E.2d 248, 252.) Construing a contract is a matter of law, suitable for summary judgment. *Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 730, 523 N.E.2d 30, 33.

The primary objective of contract construction is to give effect to the intentions of the parties. This intention should be ascertained from the words used in the contract. (*Harrison*, 189 Ill. App. 3d at 988, 546 N.E.2d at 253.) Where the terms of an agreement are clear and unambiguous, they will be given their ordinary and natural meaning. (*Reynolds v. Coleman* (1988), 173 Ill. App. 3d 585, 593, 527 N.E.2d 897, 902.) The intent should not be gathered from any clause or provision standing by itself, but each provision should be viewed in the light of all the other parts. *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283, 154 N.E.2d 683, 689 (and authorities cited therein); see also *United Airlines, Inc. v. City of Chicago* (1987), 116 Ill. 2d 311, 318, 507 N.E.2d 858, 861.

A document is not ambiguous just because the parties failed to agree upon its meaning. A document is ambiguous if its terms are capable of being understood in more than one sense because either an indefiniteness of expression or double meaning is attached to them. (*Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 797, 461 N.E.2d 1031, 1034.) It is fundamental in contract construction that, if possible, effect must be given to all of the language so that provisions which appear to be conflicting or inconsistent may be reconciled and harmonized. *In re Support of Halas* (1984), 104 Ill. 2d 83, 92-93, 470 N.E.2d 960, 964 (and cases cited therein).

> "The general rule is that in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract. [Citations.] ***
>
> 'Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limit-

ing, explaining, or otherwise affecting the provisions of another, they will be given effect.' (17 Am. Jur. 2d *Contracts* sec. 264, at 670 (1964).) '[C]ontemporaneous means so proximate in time as to grow out of, elucidate and explain the quality and character of the transaction, or an occurrence within such time as would reasonably make it a part of the transaction.' (*Elsberry Equipment Co. v. Short* (1965), 63 Ill. App. 2d 336, 346-47, 211 N.E.2d 463, 468.)" (*Tepfer v. Deerfield Savings & Loan Association* (1983), 118 Ill. App. 3d 77, 80, 454 N.E.2d 676, 679.)

An instrument will be most strongly construed against the party who prepared it. *Carrico v. Delp* (1986), 141 Ill. App. 3d 684, 689, 490 N.E.2d 972, 976, citing *Cedar Park Cemetary Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 333, 75 N.E.2d 874, 879.

The trial court found "prepayment" meant payment prior to the date the entire debt had to be satisfied, that is prior to July 1, 2007, *but after* August 1, 1987. The trial court further found the amortization of the loan spanned 20 years, beginning August 1, 1987, and ending July 1, 2007. Finally, the trial court concluded the note provided the penalty be charged whenever prepayment of the principal was made within that 20-year period—that period being the "term of this loan."

First Federal contends the trial court erred in granting summary judgment in favor of the Bankiers in (1) failing to give the terms of the note their natural and ordinary meaning and (2) improperly considering evidence extraneous to the note. First Federal asserts the only relevant document the trial court should have considered was the note, which clearly and unambiguously required a prepayment penalty if the loan was prepaid during the first 10 years of the loan. First Federal concludes there was only one loan, evidenced by the note, which was in existence on June 1, 1987, and which was prepaid on July 1, 1987, thereby requiring a prepayment penalty.

The Bankiers argue four documents (the loan commitment letter, the note, the mortgage, and the agreement) were properly considered by the trial court in granting summary judgment in their favor. They assert the operative document is the agreement since that was the document in effect during the construction phase of the construction-permanent loan. Since that document contains no language requiring a prepayment penalty, they argue neither party intended the prepayment penalty contained in the note to apply during the construction phase of the loan. The Bankiers also contend the prepayment penalty applied to a prepayment of "principal" and since payments of princi-

pal did not begin until August 1, 1987, no prepayment penalty applied before then.

■ We agree that the relevant documents to consider for purposes of determining whether the prepayment penalty applied are the loan commitment letter, the note, the mortgage and the agreement. The note, mortgage, and agreement were executed the same day and the loan commitment letter was accepted by the Bankiers less than one month prior to executing the other three documents. These documents were executed by the same parties, relate to the same real estate development project and clearly constitute one transaction. As such, they must be construed together.

The loan commitment letter provided for graduated prepayment penalties during the course of "the loan." The "loan term" as defined in the loan commitment letter called for a construction loan of 12 months and a permanent loan to be amortized for a period not to exceed 25 years. The note contains several paragraphs that have been typewritten onto the form itself and were initialed by Leon Bankier. The note also contains an additional paragraph specifically acknowledging the prepayment penalty evidenced by Leon Bankier's initials. The mortgage contains a paragraph which states:

> "(1) PAYMENT OF PRINCIPAL AND INTEREST. Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, *any prepayment and late charges provided in the Note* and all other sums secured by this Instrument." (Emphasis added.)

Finally, the agreement makes no reference to any prepayment penalties. Thus, two documents (the loan commitment letter and the note) require a prepayment penalty if "the principal of this loan during the term of this loan" is prepaid. The mortgage refers to the prepayment penalty contained in the note and the agreement is silent on the issue.

■ After examining the note and loan commitment letter, we conclude a question of material fact exists as to whether the term of the loan was 20 or 21 years. A typed addition on the first page of the note specifically required the Bankiers to pay interest on the sums advanced until the first day of the month following completion of the construction. It was not disputed that money was advanced between July 1, 1986, and June 30, 1987, and that the Bankiers did make the required interest payments. Thus, the language regarding the payment of money during the construction phase of the loan suggests the loan was for a period of 21 years, one year for the construction phase of the loan and 20 years for the permanent phase of the loan. First Federal advanced money to the Bankiers pursuant to the agreement

and the Bankiers in return made monthly interest payments on those sums during the first year of the loan.

The apparent purpose of the prepayment penalty is to cover the bank's cost incurred by having to borrow money on the secondary market to issue loans to its customers. Because of the graduated prepayment penalties, an inference can be drawn that the less time the loan is outstanding, the more it will cost the bank. Thus, the prepayment penalty decreases over time. If that is so, the bank would incur its greatest cost during the first year it loaned the money to the Bankiers, *i.e.*, the time period between July 1, 1986, and June 30, 1987, the construction phase of the loan.

The loan commitment letter refers to the term of the construction loan being 12 months, with the construction *portion* to be completed and closed within 12 months of the date the mortgage documents were executed. The use of the term "portion" suggests that the 12-month period is indeed a part of the whole term of the loan. That paragraph also states the permanent loan will be amortized over a period not to exceed 25 years. It does not say the term of the loan is 20 years. Moreover, the opening paragraph states: "Your request for a construction-permanent first mortgage loan \*\*\* has been approved \*\*\*." Paragraph 4 states: "During the construction period of the loan \*\*\*." This suggests a two-phase or two-part loan.

A question of material fact exists as to the term of the loan, and the trial court erred in granting summary judgment on count I of the complaint. Accordingly, as to the issue raised by defendant First Federal in the appeal, the trial court is reversed and cause remanded.

## II. THE CONSUMER FRAUD ACT

The Bankiers cross-appeal the trial court's grant of summary judgment in favor of First Federal on counts II and III of their complaint. Count II alleged a violation of the Act, and count III sought punitive damages for that violation. The Bankiers contend they have alleged a *prima facie* case under the Act. They contend First Federal created a variety of loan closing documents which were confusing and misleading to them, and that Dennis Mulvaney made false, deceptive, and misleading statements concerning the applicability of the prepayment penalties contained in the contract documents. First Federal contends that the Consumer Fraud Act does not apply because this was a business transaction and does not involve any sort of consumer fraud.

The Bankiers suggest this issue has been waived since First Federal failed to raise it prior to this appeal. Issues raised for the first

time on appeal may not normally be considered by the appellate court. (*Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 303, 443 N.E.2d 575, 577 (and cases cited therein).) A party may not raise on appeal defenses not interposed in its answer before the trial court. (*Kaiser Agricultural Chemicals v. Rice* (1985), 138 Ill. App. 3d 706, 713, 486 N.E.2d 417, 422.) A reviewing court can, however, in furtherance of its responsibility to provide a just result, override considerations of waiver and consider a point tardily presented. The rule of waiver is a limitation on parties and not the courts. *In re Sutton* (1990), 136 Ill. 2d 441, 446, 557 N.E.2d 869, 871.

■ Initially, we agree with the first and third districts of this court that the Act applies to mortgage lenders. (See *Mid-America National Bank v. First Savings & Loan Association* (1987), 161 Ill. App. 3d 531, 540, 515 N.E.2d 176, 182; *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 215, 438 N.E.2d 1247, 1250.) However, this is not the type of transaction which was meant to be covered by the Act. To establish a cause of action under the Act, a plaintiff must show (1) the defendant's actions or practices were deceptive; (2) the defendant intended the plaintiff to rely on the deception; and (3) the deception occurred in the course of conduct involving a trade or commerce. Plaintiffs suing under the Act need not establish all of the elements of common law fraud, as the Act prohibits any deception or false promise. *Lane v. Fabert* (1989), 178 Ill. App. 3d 698, 705, 533 N.E.2d 546, 550-51 (and cases cited therein).

A simple example of the type of transaction intended to be encompassed by the Act is found in *Crowder v. Bob Oberling Enterprises, Inc.* (1986), 148 Ill. App. 3d 313, 499 N.E.2d 115. There, plaintiff bought a used car from defendant, who represented to plaintiff that the car was a good used car. In fact, the car once had been a salvage car, had been standing in brackish water over the engine and had a bent frame. Plaintiff experienced major problems with the car after the warranty had expired and eventually filed suit under the Act. This court found defendant engaged in fraudulent misrepresentations and affirmed the trial court's finding that defendant violated the Act.

Another example of the type of transaction covered by the Act occurred in *Kennedy v. First National Bank* (1990), 194 Ill. App. 3d 1004, 551 N.E.2d 1002. Plaintiff alleged defendants conspired to collect a judgment they knew to be invalid and unenforceable. This court found the allegations in certain counts of plaintiff's complaint were sufficient to state a cause of action for a violation of the Act.

Finally, in *Lane* (178 Ill. App. 3d at 704-06, 533 N.E.2d at 550), this court held plaintiff stated a valid claim under the Act. In that case, plaintiff received $60 from defendant, an experienced pawnbroker, in exchange for a ring. Thereafter, plaintiff paid $18 a month for over one year. When she went to claim the ring, defendant told her it could not be found. Plaintiff alleged she believed she had merely pledged the ring and would lose any rights to it only if she failed to make the $18 monthly payments. This court rejected defendant's contention that this was merely a sales transaction where plaintiff had become dissatisfied with her bargain. This court believed there was a dispute over the intent of parties which precluded summary judgment. Thus, the case was allowed to proceed to trial to determine whether defendant had violated the Act.

The case at bar is most analogous to *Exchange National Bank* (108 Ill. App. 3d 212, 438 N.E.2d 1247). There, the plaintiffs were beneficiaries of a land trust which held title to certain real property. They contracted with the defendant for a permanent loan commitment which was to be secured by a mortgage on the property in the land trust. The commitment could be extended for no longer than 180 days without defendant imposing a fee. Through the course of the loan, the permanent financing contract was extended beyond the 180 days and defendant therefore invoked the penalty clause. Plaintiffs filed a lawsuit alleging breach of contract, tortious interference with a contract, fraud and a violation of the Act.

With respect to the Act count of the complaint, the court noted that the Act did not apply in every situation where the only actual controversy was whether an isolated breach of contract occurred. The court stated:

> "In the absence of an allegation indicating such practices to be part of a pattern of defendants' lending activities, we believe count V fails to state a cause of action. Every individual breach of contract between two parties does not amount to a cause of action cognizable under the Act. If it did, common law breach of contract actions would be supplemented in every case with an additional and redundant remedy. Such is not the intention of the Consumer Fraud Act." *Exchange National Bank*, 108 Ill. App. 3d at 216, 438 N.E.2d at 1250.

Our courts have held that the Act should not apply to simple breach of contract claims. (*Village of Pawnee v. Azzarelli Construction Co.* (1989), 183 Ill. App. 3d 998, 1026, 539 N.E.2d 895, 913 (and cases cited therein).) The Act was not intended to extend to every transaction between contracting parties. (*Christensen v. Numeric Mi-*

*cro, Inc.* (1987), 151 Ill. App. 3d 823, 829, 503 N.E.2d 558, 563.) Every individual breach of contract between two parties does not amount to a cause of action cognizable under the Act. Furthermore, the Act is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to address a purely private wrong. *IK Corp. v. One Financial Place Partnership* (1990), 200 Ill. App. 3d 802, 817, 558 N.E.2d 161, 171 (and cases cited therein).

■ Basically, this case involves a breach of contract between a borrower and a lender relating to the construction of contract documents. It is a purely private wrong between two parties and does not affect consumers generally. The Bankiers have presented no evidence to show this is a part of First Federal's lending practices nor any evidence that First Federal engaged in any deceptive practices. This case is vastly different than those cited earlier where there was a valid cause of action under the Act. In each of those cases, the defendant made an affirmative misrepresentation to the plaintiff. Here, First Federal and the Bankiers merely disagree on the interpretation of the contract between them. There is no assertion of public injury but only monetary damage to the Bankiers. Since this is a simple breach of contract dispute, the Act does not apply to this particular transaction.

The trial court granted summary judgment in favor of First Federal on counts II and III of the complaint based on a common law defense to fraud. Without addressing the correctness of that ruling, we note a reviewing court may consider whether judgment is justified for any reason or ground appearing of record. *City of Marshall v. City of Casey* (1989), 177 Ill. App. 3d 1065, 1069, 532 N.E.2d 1121, 1123.

To summarize, for the foregoing reasons, the granting of summary judgment in favor of the Bankiers on count I of the complaint is reversed and this cause is remanded for trial on count I; with respect to the cross-appeal, the granting of summary judgment in favor of First Federal on counts II and III is affirmed.

Affirmed in part; reversed in part and remanded with directions.

STEIGMANN and KNECHT, JJ., concur.