SAMUEL F. KENNEDY, Plaintiff-Appellant, v. FIRST NATIONAL BANK OF MATTOON *et al.*, Defendants-Appellees (James F. Reimer *et al.*, Defendants).

Fourth District    No. 4—93—0777

Argued February 22, 1994.—Opinion filed March 18, 1994.

Steven C. Ward and Duane D. Young (argued), both of Heckenkamp, Simhauser & LaBarre, P.C., of Springfield, for appellant.

Stephen A. Tagge (argued) and Mark Cullen, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On November 7, 1988, plaintiff Samuel F. Kennedy brought suit in the circuit court of Coles County against defendants First National Bank of Mattoon (FNB), Bank of Findlay (Findlay), Judith L. Reimer, James F. Reimer, and Reimer Estates, Inc. (Reimers). Amendments were made and on June 6, 1989, the court allowed defendants' motion to dismiss with prejudice amended counts II through VII. Appeal was taken to this court and we affirmed the dismissal as to amended counts V, VI, and VII, but reversed the dismissal of amended counts II, III, and IV, and remanded (*Kennedy v. First National Bank* (1990), 194 Ill. App. 3d 1004, 551 N.E.2d 1002). We held that amended counts II, III, and IV properly charged violations of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 1992)).

After remand, on August 4, 1993, the circuit court allowed a motion by Findlay for summary judgment as to count I of the original complaint and as to counts II, III, and IV of the amended complaint. The court then found that no just reason existed to delay enforcement or appeal from that judgment. (134 Ill. 2d R. 304(a).) Kennedy filed a timely notice of appeal from the entire summary judgment, but argues for reversal only as to amended counts II and IV. We reverse

the summary judgment as to amended count II and affirm the summary judgment as to the other counts.

Amended count II alleged that (1) on November 6, 1978, the Reimers borrowed $50,000 from FNB and executed and delivered to FNB a note in that principal amount; (2) Kennedy signed that note as an accommodation maker and did not receive any proceeds of the loan; (3) Reimers defaulted on the note and FNB obtained separate default judgments on the note against Kennedy and the Reimers; (4) thereafter, on November 12, 1982, FNB garnished Champion Federal Savings and Loan Association (Champion), which was indebted to Reimers in the amount of $150,000; (5) on November 18, 1986, FNB assigned all interest in its judgments against Kennedy and Reimers to a firm of attorneys who represented Reimers in obtaining for it a $150,000 obligation of Champion; and (6) that assignee of the judgments then released the garnishment against Champion and received the $150,000 from Champion as Reimers' attorneys.

The alleged receipt by Reimers' attorneys, while they were representing Reimers, of an assignment of the judgments against Reimers and Kennedy is at the heart of Kennedy's theory of action against Findlay. Kennedy alleged that the receipt of that assignment satisfied, extinguished, and discharged the judgment just as an assignment directly to the judgment debtor would have done. (See *Marks v. L.C.J. Construction Co.* (1980), 89 Ill. App. 3d 418, 421, 411 N.E.2d 1027, 1030; 49 C.J.S. *Judgments* § 568, at 1043-48 (1947).) Kennedy further maintained that the judgment against him was also discharged, because it was for the same debt as the judgment against Reimers.

Count II further alleged that (1) on November 6, 1986, FNB, in consideration of $50,000, assigned the satisfied judgments against Kennedy and the Reimers to Findlay; (2) Findlay misrepresented to the Reimers that the judgments against the Reimers and Kennedy were enforceable and valid in order to induce the Reimers to execute a promissory note and mortgage on December 4, 1986, in FNB's favor; (3) in consideration of the December 4, 1986, note, Findlay executed a total release of the judgment against the Reimers and covenanted not to execute the judgment against the Reimers, expressly reserving full rights against Kennedy; (4) Findlay further agreed with the Reimers to collect the judgment against Kennedy and credit the amount collected against Reimers' other indebtedness to FNB; (5) Findlay concealed from the Reimers that the judgments had previously been satisfied and were no longer enforceable; and (6) FNB attempted to collect the judgment against Kennedy, "though aware of the invalidity and unenforceability" of that judgment. Amended count II then

alleged that the attempt to collect the judgment by Findlay included service of a citation on Kennedy and an arrest of Kennedy, all of which caused Kennedy expenses, including attorney fees. Amended count II accused Findlay of "using deception, fraud, false pretenses" and other inappropriate methods, all in violation of section 2 of the Act. 815 ILCS 505/2 (West 1992).

In amended count IV of the complaint against Findlay and the Reimers, plaintiff realleged amended count II and further alleged that Findlay and the Reimers "knowingly conspired together and with each other to wrongfully obtain and collect money not due from plaintiff [under a judgment Findlay and the Reimers] knew was satisfied and no longer enforceable," in violation of the Act.

Findlay's motion for summary judgment was based upon its contentions that (1) the Act does not apply to the conduct alleged; and (2) in any event, affidavits and other information produced by it conclusively negate any factual basis for finding Findlay guilty of a violation of the Act. Passing upon the propriety of the grant of summary judgment entered here requires consideration of section 2—1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1005 (West 1992)), which sets forth the procedure for obtaining summary judgments and the doctrine of the law of the case.

Section 2—1005(c) of the Code states that, upon a motion for summary judgment being made, the circuit court shall enter such a judgment on behalf of a movant on one or more facts in the case when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992).) The doctrine of the law of the case provides the rulings on points of law made by a court of review are binding in that case upon remand to the trial court and on subsequent appeals to that same reviewing court unless a higher court has changed the law. *Vulcan Materials Co. v. Holzhauer* (1992), 234 Ill. App. 3d 444, 451, 599 N.E.2d 449, 454.

In its order granting summary judgment, the circuit court gave little significance to our decision in *Kennedy*, maintaining that it "addressed only pleading issues." The pleading issue we decided was that the ultimate facts alleged in each count upheld were sufficient, as a matter of law, to charge a violation of the Act. A determination of a question of law on the first appeal is the basis of the law of the case doctrine. No indication has been given that the law applied in the first appeal has been changed by a higher court. Findlay indicates that the decision of this court in *Bankier v. First Federal Savings &*

*Loan Association* (1992), 225 Ill. App. 3d 864, 588 N.E.2d 391, is inconsistent with holding that the circumstances alleged here constitute a violation of the Act. However, the opinion in that case specifically referred to the situation alleged in *Kennedy* as an example of the type of transaction intended to be covered by the Act. *Bankier*, 225 Ill. App. 3d at 873, 588 N.E.2d at 397.

Findlay stated in its motion for summary judgment that the "allegations" of the three counts in issue were insufficient to show a violation of the Act. For us to now consider again the sufficiency of the allegations would be to rehash the issues, directly contrary to the rule of the law of the case. For a motion for a summary judgment to be allowed after the sufficiency of the complaint has been upheld, the motion must set forth factual matter which negates necessary allegations of the complaint. As we will explain, the factual matter presented in support of Findlay's motion did not tend to negate the nature of the transaction involved. Rather, it attacked the allegations of the knowledge and intent with which Findlay entered into the transaction alleged. We do not uphold the summary judgment entered on any count on the basis that the transaction involved was not covered by the Act.

As Findlay has pointed out, "when an opponent fails to file a counteraffidavit [or counterdeposition], the facts contained in the movant's affidavits and depositions are then accepted as true, notwithstanding any contrary assertions contained in the opponent's pleadings." (*Eberle v. Brenner* (1985), 131 Ill. App. 3d 394, 397, 475 N.E.2d 639, 641, citing *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500-01.) Here, Findlay supported its motion for summary judgment with the affidavit of Gregory H. Bohlen, who stated he was an officer of Findlay from 1981 to 1991 and the officer of Findlay "almost exclusively, involved in the purchase of the" judgments against Kennedy and Reimers.

In Bohlen's affidavit, he stated (1) in November 1986, Reimers were substantially indebted to Findlay with inadequate collateral, and the judgments were acquired only to "shore up, augment and bolster its position with Reimers"; (2) Findlay used its own money to purchase the judgments and was reimbursed for all of this money by payments from Reimers; and (3) Findlay made inquiries to verify the validity of the judgments before purchasing them and obtained a covenant from FNB that they were valid.

Bohlen's affidavit also stated that (1) at all times he and Findlay believed in good faith that the judgments were fully valid; (2) Findlay's relations with Reimers were "hostile, suspicious, unfriendly, distrustful, adversarial, and confrontational"; and (3) at no time did

Findlay or Bohlen misrepresent to Reimers that the judgments were enforceable when they allegedly were not, or conceal the alleged unenforceability with the intent the Reimers or others would rely on the misrepresentation or concealment.

The significant aspects of Bohlen's affidavit were that it tended to negate that (1) Findlay had knowledge of the invalidity of the judgment against Kennedy which it allegedly attempted to enforce; and (2) Findlay's relations with Reimers were such that a conspiracy could take place. We do not deem other matter presented in support of Findlay's motion for summary judgment was crucial to the summary judgment entered.

Kennedy countered Bohlen's affidavit by filing excerpts from a deposition taken from Bohlen. In this deposition, Bohlen testified that (1) on behalf of Findlay, he was involved in the acquisition of the judgments against Kennedy and Reimers; (2) he discussed the acquisition of the judgments with one of the attorneys for Reimers and thought that the judgment had been acquired from that attorney; (3) during these conversations, he was told that firm or that lawyer owned the judgments; (4) agreement was made between Findlay and Reimers not to pursue Reimers on the judgment; (5) on further recollection, he determined that the judgment had been acquired from FNB; (6) Findlay had been concerned with whether the judgment against Kennedy was valid; and (7) to the "best of [his] remembrance," the purpose of acquiring the judgment was to "shore up [Findlay's] position with the Reimers."

Thus, in his deposition Bohlen admitted that he knew of the assignment of the judgments to Reimers' attorneys and that he was worried as to the validity of the judgments. A reasonable inference arising from Bohlen's explanation that Findlay bought the judgments against Kennedy and Reimers "to shore up its position with Reimers" was that because of Reimers' insolvency Findlay desired to collect the judgments from the note to FNB from Kennedy, the accommodation maker, so that Reimers' assets would be available to apply to other debts to Findlay. The guarantee of the judgment by FNB protected Findlay from losing money by virtue of acquiring the judgment, but it did not protect Kennedy from being subject to an improper attempt to enforce an invalid judgment. Under the circumstances set forth in Bohlen's affidavit and his deposition, a question of fact existed as to whether he knew that the judgment against Kennedy was invalid. Summary judgment should not have been entered as to amended count II.

Nothing in Bohlen's affidavit nor in any other matter presented to the court countered the statement in Bohlen's affidavit that Find-

lay's relation with Reimers was such that no conspiracy between them existed. Accordingly, the circuit court properly granted summary judgment as to count IV.

As we have indicated, we reverse the summary judgment entered in favor of Findlay as to amended count II. We affirm the summary judgment entered as to other counts. We remand to the circuit court of Coles County for further proceedings.

Affirmed in part; reversed in part and remanded.

LUND and STEIGMANN, JJ., concur.