Julius V. MOORE, Jr., Plaintiff,

v.

FIDELITY FINANCIAL SERVICES, INC., Fidelity Acceptance Corporation, Florian A. Stang, Ivan Fercho, and John Does 1–10, Defendants.

No. 94 C 2558.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 14, 1997.

Daniel A. Edelman, James O. Latturner, Cathleen Combs Cohen, Tara Leigh Goodwin, Daniel Payne Lindsey, Michelle Ann Weinberg, Adam Goodman, Edelman & Combs, Chicago, IL, James Eric Vander Arend, Gessler, Hughes & Socol, Ltd., Chicago, IL, for plaintiff.

Jonathan N. Ledsky, Craig Allen Varga, Varga, Berger, Ledsky & Hayes, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Julius V. Moore, Jr. brings this six count amended putative class action complaint against defendants, Fidelity Financial Services, Inc. ("Fidelity"), its corporate parent, Fidelity Acceptance Corporation ("FAC"), and certain of their officers and directors, alleging that all were involved in devising and implementing a scheme for imposing and collecting illegal charges from consumers. Counts I through III are brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), against Fidelity, FAC, and the officers and directors, respectively. Count IV is a Truth–In–Lending Act ("TILA"), 15 U.S.C. § 1640, claim against Fidelity. Count V is a breach of contract

claim against Fidelity, and Count VI is a claim against Fidelity and FAC under the Illinois Consumer Fraud Act, 815 ILCS 505/2. Defendants have moved to dismiss the RICO counts, I through III, and FAC has moved to dismiss Count VI for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, defendants' motions are granted.

## FACTS

In May 1992 plaintiff purchased a Nissan automobile from Mid City Nissan. He financed that purchase through defendant Fidelity. Plaintiff obtained a loan in the amount of $9,769.83 with an annual percentage interest rate of 23.43%. The loan was secured by the automobile. The loan agreement and TILA statement were prepared on standard pre-printed forms. The loan agreement required plaintiff to insure the automobile against loss from fire, theft, and casualty. Specifically, the agreement provided:

"I will keep the security insured against loss by fire, theft and collision in case of motor vehicles, and against loss by fire for other security. If I do not I am in default or at your option, you may advance the premium on required or authorized insurance, the advance will become a part of the Note, and it will be secured by this Security Agreement, and will bear interest at the Agreed Rate of Charge provided for in the Note."

Plaintiff failed to purchase insurance, and on November 15, 1993, defendant Fidelity purchased insurance on the automobile (a practice denominated by plaintiff as "force placed insurance"). As a result, Fidelity added $1,090.00 to plaintiff's loan balance as premium for the policy, and charged the increased premium at the same 23.43% interest rate. Fidelity did not send plaintiff a new credit disclosure statement, but did send a copy of the insurance policy purchased. Plaintiff alleges that the insurance that defendant regularly purchases in such cases, including the insurance purchased in this case, includes coverage not required under the agreement, and cost Fidelity less than the amount charged to consumers due to kickbacks from the insurance company.

Plaintiff failed to make the required payments. In January 1994, Fidelity told plaintiff that if he paid $430.00 toward the premium, the balance of the premium would be added to the end of his contract. Plaintiff paid the $430.00, but alleges that defendant demanded further payment prior to the end of the contract, which he then refused to pay. Fidelity repossessed the automobile on April 13, 1994, and sent plaintiff a repossession notice the following day.

## DISCUSSION

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). When deciding a motion to dismiss, the court shall accept as true all of plaintiff's well pleaded factual allegations and otherwise liberally construe the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In addition, the court must give the plaintiff the benefit of every reasonable inference that may be drawn from the facts. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981).

## THE RICO COUNTS

The defendants have moved to dismiss Counts I through III, the RICO counts, which allege violations of 18 U.S.C. § 1962(c):

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs to a pattern of racketeering activity or collection of unlawful debt.

To state a claim under section 1962(c), a RICO plaintiff must show the "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

Defendants attack plaintiff's RICO claims on the second element, asserting that plaintiff has presented insufficient allegations of

an enterprise through which the alleged racketeering activity took place. As discussed below, defendants are correct. The court's review of the complaint reveals, however, that it also fails to plead sufficient allegations of racketeering activity.

■ Racketeering activity under RICO can consist only of the various criminal acts set forth in 18 U.S.C. § 1961(1). There must be at least two such predicate acts properly pled in order to even address whether other precedential requirements for a cognizable RICO "pattern" have been satisfied. *Id.; Dennis v. Peoples Gas Light & Coke Company*, 1990 WL 70372 (N.D.Ill.1990). Plaintiff attempts to meet this predicate act requirement by alleging that defendant committed various acts of mail fraud. Mail fraud is one of the criminal acts specified in § 1961(1) as racketeering activity.

■ The elements of a cause of action for mail fraud are: (1) intentional participation in a scheme to or specific intent to defraud; and (2) use of the mails in furtherance of the scheme. *Associates in Adolescent Psychiatry v. Home Life Insurance Co.*, 751 F.Supp. 727, 729 (N.D.Ill.1990), aff'd, 941 F.2d 561 (7th Cir.1991). To establish fraud, the plaintiff must show that the defendant made a false representation of material past or existing fact, which was known to be false when made. The misrepresentation must have been made intentionally to induce the plaintiff to act, and the plaintiff must justifiably rely on the representation. Finally, the plaintiff must be injured as a result of such reliance. *Id.* at 730. It is not necessary that the mailing itself contains misrepresentations of fact, only that it constitutes a part of the fraudulent scheme. *Schmuck v. United States*, 489 U.S. 705, 715, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989). The plaintiff must show, however, that the defendant engaged in a "scheme to [defraud or] deprive another of money or property by means of false pretenses, representations, or promises." (quoting *Carpenter v. United States*, 484 U.S. 19, 27, 108 S.Ct. 316, 321, 98 L.Ed.2d 275 (1987)). The plaintiff must establish that the defendant had the intent to implement such a scheme. It is "incumbent upon the plaintiff ... to demonstrate that he

would be able to place before a jury sufficient evidence of an intent to deceive...." *Id.* Of course, pursuant to Fed.R.Civ.P. 9(b) plaintiff must plead this fraud with particularity. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir.1994).

■ Plaintiff's complaint fails to identify specifically any false or misleading statement of fact upon which plaintiff relied justifiably to his detriment. While the complaint takes great pains to detail the manner in which defendants proceeded to obtain and charge plaintiff for unauthorized insurance, it fails to identify any allegedly false or misleading statement made by any of the defendants in this case. As plaintiff himself describes it, his "basic complaint is that defendants violated a number of laws, including RICO, through a program of obtaining unauthorized insurance for borrowers and then charging them for that unauthorized insurance." He asserts that "defendants engaged in an intentional, coordinated, long-term program of obtaining and charging borrowers for insurance where the borrowers' credit contract did not authorize defendants to charge them for that insurance." He is thus arguing that defendants' breach of contract constitutes fraud.

The details of the fraud are, according to plaintiff, alleged in paragraphs 33 through 59 of the complaint. Yet nowhere in those paragraphs has plaintiff identified a single misrepresentation or false statement. The only "statement" identified by plaintiff is the one in the loan/security agreement providing that should plaintiff default by failing to procure insurance, defendant has the option of repossessing the car or purchasing the insurance itself. By itself, however, that statement is insufficient to support a claim for fraud. First, it is not a "statement made by Fidelity" to induce plaintiff to do anything. Indeed, it is a statement by plaintiff made to induce defendant Fidelity to extend him credit. Moreover, and perhaps more importantly, plaintiff has not and cannot identify anything in the statement that is untrue. To the extent that the statement can be attributable to Fidelity at all, it must be considered a statement of possible or contingent future

action, not of a past or existing fact.[1] If plaintiff failed to purchase insurance, then Fidelity could, but was not required to, purchase the insurance. It could, however, elect to repossess the car. Plaintiff has never alleged that Fidelity ever represented that it would or was obligated to purchase authorized insurance. To the contrary, all the contract does is grant Fidelity the option to purchase insurance or repossess the car upon plaintiff's default. There is nothing false or fraudulent in that representation.

Perhaps, without explicitly stating, plaintiff is attempting to plead a material omission or concealment of material information which can, in certain circumstances, constitute fraud. *See Emery v. American General Finance Incorporated,* 71 F.3d 1343 (7th Cir. 1995). Plaintiff has not alleged, however, that the statement is a half-truth or contains a material omission and, unlike in *Emery,* the instant complaint contains no allegation that defendants target individuals who do not understand or are incapable of understanding loan documents or security agreements, and that defendants sought to take advantage of such disadvantaged persons. Also unlike in *Emery,* no information was withheld from plaintiff. According to the allegations of the complaint, plaintiff agreed that he was required to maintain insurance on the automobile, that if he failed to maintain such insurance he would be in default of his loan and that defendant could elect, at its option, to purchase authorized insurance and charge plaintiff for the premium. When defendant elected to purchase insurance, a copy of the policy was sent to plaintiff. As stated by Judge Plunkett in dismissing the complaint in *Dixon v. TCF Bank Illinois,* 1995 WL 622409, *3 (N.D.Ill.1995), a strikingly similar case also brought by plaintiff's counsel,

> ... there is no allegation that [defendant] misrepresented the nature of the insurance it purchased, nor does [plaintiff] allege with particularity that [defendant] made any misrepresentation in connection with

its attempts to collect the deficiency. At most, [plaintiff's] complaint amounts to allegations of breach of contract—purchasing insurance on [plaintiff's] behalf beyond that authorized by the installment sales agreement—and violations of certain state law claims not relevant to the RICO allegations.

*See also Kenty v. Bank One, Columbus, N.A.* 92 F.3d 384 (6th Cir.1996) (court dismissed forced-placed insurance Rico complaint where plaintiff received notice of the insurance purchased, noting that if the defendants were attempting to deceive the plaintiffs it is unlikely that they would have placed all of the endorsements on the notices sent to the plaintiffs).

Additionally, nowhere has plaintiff alleged that he has ever relied on any misrepresentation or omission by defendant. He has alleged that Fidelity fails. to indicate, prior to purchasing the insurance, that the premiums will be computed on a gross contract balance and that the insurance it secures "will [insure] losses entirely without an applicable deductible." What he fails to allege, however, is that his election not to purchase insurance, thus placing himself in default risking repossession, was based on defendant's option to repossess or purchase authorized insurance or defendant's omission of the information about the insurance actually purchased. Nor does he allege that he elected to enter into the loan/security agreement based on Fidelity having the option to purchase insurance rather than repossess the vehicle, or even that he would not have entered into the agreement had he known the type of insurance that Fidelity would purchase if he failed to purchase insurance on his own.

Indeed, it would be difficult, if not impossible, for plaintiff to allege such reliance. Again, the only portion of the loan agreement upon which plaintiff relies is the language in which plaintiff agrees that his failure to obtain insurance constitutes a default in which

---

1. A promise of future action generally cannot, standing alone, be a basis for fraud because it is not a representation, there is no right to rely on it, and it is not false when made. A "statement which is merely an expression of opinion or which relates to future or contingent events, ex-

pectations or probabilities, rather than to preexistent or present facts, ordinarily does not constitute an actionable misrepresentation," at least under Illinois law. *Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1298 (7th Cir.1993).

plaintiff grants defendant the option to repossess the car or purchase authorized insurance. Plaintiff cannot argue that he relied justifiably of the chance that Fidelity would elect one future option over another. The contract accurately discloses plaintiff's and Fidelity's rights and obligations. If Fidelity purchased the wrong insurance or overcharged for it, it might be liable for breach of contract. It did not, however, commit mail fraud.

Accordingly, the court concludes that plaintiff has failed to allege any racketeering activity sufficient to sustain an allegation of a RICO violation. Counts I through III are therefore dismissed.

### RICO ENTERPRISES

■ A RICO complaint must identify the enterprise. *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir.1995). In Count I, charging Fidelity as the RICO defendant, plaintiff identifies seven potential enterprises: (1) Fidelity's corporate parent, FAC; (2) FAC's corporate parent, Bank of Boston Corp. ("BBC"); (3) FAC's corporate parent prior to 1993, Society for Savings Bank Corp., Inc. ("Society"); (4) the "corporate enterprise" headed by BBC; (5) the corporate enterprise headed by FAC; (6) the corporate enterprise headed by Society; and (7) the combination of Fidelity and the automobile dealers with which it has long term relationships defined by written contracts. In Count II, which names FAC as the RICO defendant, plaintiff identifies five corporate enterprises: (1) BBC; (2) Society; (3) the corporate enterprises headed up by BBC; (4) the corporate enterprise headed by Society; and (5) the corporate enterprise headed by FAC. In Count III, which names certain officers, directors and employees as the RICO defendants, plaintiff identifies the same seven enterprises it identified in Count I.

■ It is well settled in this circuit that liability under section 1962 requires that the RICO person or defendant be separate and distinct from the enterprise. *Richmond,* 52

**2.** Including this court's earlier decision in the instant case, *Moore v. Fidelity,* 897 F.Supp. 378

F.3d at 646. Indeed, "liability depends on showing that the defendants conducted or participated in the conduct of the enterprises' affairs, not just their own affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993).

■ Plaintiff's complaint contains detailed descriptions of BBC's corporate structure, as well as BBC's, FAC's and Fidelity's role within that structure. Numerous cases in this district[2] have addressed whether a section 1962 claim can be stated when the RICO persons and enterprises are comprised of interrelated corporate units, specifically in light of the Seventh Circuit's decision in *Richmond.* In that case, the court endorsed the analysis employed by both the Third Circuit in *Brittingham v. Mobil Corp.,* 943 F.2d 297 (3rd Cir.1991), and the Second Circuit in *Riverwoods Chappaqua v. Marine Midland Bank,* 30 F.3d 339, 343 (2nd Cir. 1994), rejecting attempts to "circumvent the distinctiveness requirement by alleging enterprises that are merely combinations of individuals or entities affiliated with the defendant corporation." *Brittingham,* 943 F.2d at 301–02.

The instant case is very similar to *Fitzgerald v. Chrysler Corp.,* 1996 WL 473456, *7 (N.D.Ill. August 16, 1996), in which Judge Marovich, relying upon *Brittingham, Riverwoods,* and *Chamberlain Manufacturing Corp. v. Maremont Corp.,* 919 F.Supp. 1150 (N.D.Ill.1996), dismissed a RICO claim, finding that:

> [T]hus, it is clear from the facts contained in Plaintiffs' Complaint that, 'the elements of an ongoing structure and an organization capable of hierarchical or consensual decision-making are nothing more than the existing corporate structure of parent and subsidiary, while the element of a joint purpose is merely the normal business affairs' of Chrysler. *Maremont,* 919 F.Supp. at 1157. This is true regardless of whether the enterprise is defined as the Chrysler Group, Chrysler plus all dealers, or Chrysler plus each individual dealer. As a

(N.D.Ill.1995).

result, Plaintiffs have asserted nothing more than that, with respect to the sale and financing of Chrysler service contracts, Chrysler conducted, and is conducting, its own corporate affairs; such an assertion is legally insufficient to satisfy the "distinctiveness" requirement for a valid RICO Section 1962© claim.

In the instant case, in Count I Fidelity, and in Count II FAC are alleged to have done nothing more, with respect to the purchasing of insurance, than merely conducting their own corporate affairs. Such assertions are legally insufficient to satisfy the distinctiveness requirement for a valid RICO § 1962© claim. Moreover, according to the allegations of the complaint, "the alleged racketeering practices could and would be carried out in the same manner whether or not [defendants] had a connection to the enterprises." *Dixon,* at *3 Indeed, the complaint alleges that Fidelity engaged in the same activities both before and after it was acquired by BBC. It is thus clear that BBC merely delegated to Fidelity the activities in which Fidelity was already engaging.

Finally, with respect to the lone remaining enterprise comprised of Fidelity and the automobile dealers, there is virtually no nexus between the dealers and the complained of activity. Under the complaint as alleged, the dealers have no interest in the amount, type, or cost of any insurance purchased by Fidelity; Fidelity purchases this insurance to protect its own interest, not that of the dealers.

Accordingly, the court concludes that plaintiff has failed to allege adequately a RICO enterprise in any of Counts I, II, or III. These counts are therefore dismissed for this reason as well as for failure to allege racketeering activity.

### THE ILLINOIS CONSUMER FRAUD ACT

Finally, FAC has moved to dismiss Count VI as to it for failure to state a claim under the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.* The elements of a claim under this section are: "(1) a statement by the sellers; (2) of an existing or future material fact; (3) that was untrue, without regard to defendant's knowledge or lack thereof of such untruth; (4) made for the purpose of inducing reliance; (5) on which the victim relies; and (6) which resulted in damages to the victim." *Malooley v. Alice,* 251 Ill.App.3d 51, 190 Ill.Dec. 396, 621 N.E.2d 265 (3rd Dist.1993). Plaintiffs suing under the Consumer Fraud Act need not establish all of the elements of common law fraud, because the act prohibits any deception or false promise. *Bankier v. First Federal Savings & Loan Ass'n of Champaign,* 225 Ill.App.3d 864, 167 Ill.Dec. 750, 588 N.E.2d 391 (4th Dist.1992). The act provides broader consumer protection than an action for common law fraud. *Connor v. Merrill Lynch Realty Inc.,* 220 Ill.App.3d 522, 163 Ill.Dec. 245, 581 N.E.2d 196 (1st Dist.1991).

FAC argues that it is not a seller under the act because it had no face to face dealings with plaintiff. Plaintiff alleges however, that FAC and Fidelity were part of a joint scheme to defraud or deceive him. Under the circumstances, the court concludes that the count states a cause of action against FAC under the Consumer Fraud Act. FAC's motion to dismiss Count VI is therefore denied.

### CONCLUSION

For the reasons set forth above, defendants' motions to dismiss Counts I through III, is granted. FAC's motion to dismiss Count VI is denied. This matter is set for status on January 28, 1997, at 9:00 a.m., at which time the parties shall address the remaining issues in this case and propose a schedule for discovery on and resolution of those issues.