RANDY MARTZ, Plaintiff-Appellant, v. MacMURRAY COLLEGE, Defendant-Appellee.

Fourth District   No. 4—93—0666

Opinion filed December 30, 1993.

Lon D. Weaver and Gail G. Renshaw, both of The Lakin Law Firm, P.C., of Wood River, for appellant.

Thomas L. Veith and Daniel J. Beard, both of Bellatti, Fay, Bellatti & Beard, of Jacksonville, for appellee.

JUSTICE LUND delivered the opinion of the court:

The circuit court of Morgan County entered summary judgment against plaintiff Randy Martz and in favor of defendant MacMurray College (MacMurray). A motion to reconsider was denied. Plaintiff appeals from the trial court's decisions in the small claims action.

On August 13, 1986, plaintiff signed a contract with MacMurray, whereby he became the head baseball coach, assistant football coach, and athletic recruiter. His duties included teaching three activity courses per semester. The annual salary was $15,500, with monthly payments of $1,291.67, and the first contract was from August 1, 1986, through May 31, 1987. The contract included an annual four-week vacation, earned on a *pro rata* basis, and the contract provided the vacation must be taken within the contract year.

The next contract was for June 1, 1987, through May 31, 1988, with the same salary, but providing the additional requirement that "the remainder of [his] time [be] working in Admissions." The vacation provision was basically the same. The contract for June 1, 1988, to May 31, 1989, was for the same salary and was basically the same as the prior year's contract. The June 1, 1989, through May 31, 1990, contract raised the salary to $15,965, but was otherwise basically the same. Plaintiff terminated his employment in June 1990.

Plaintiff contends that due to his coaching and teaching responsibilities it was necessary to take his vacation in the month of July *after* the end of the contract's fiscal year. His amended complaint states in part: "4. Both parties have demonstrated by their course of conduct that vacation earned during a year is redeemed during the subsequent year." He requested that MacMurray pay him $1,390 in vacation pay for fiscal year June 1, 1989, through May 31, 1990.

We initially chastise plaintiff's counsel, defendant's counsel, and the trial court. This case involves a claim for $1,390 for vacation-time compensation. Plaintiff's counsel filed the small claim on July 30, 1990, in Madison County and, unless totally incompetent, knew the proper venue was Morgan County—place of plaintiff's employment, place of contract of employment, and location of defendant. This conduct resulted in venue being litigated and transferred to Morgan County. The order of transfer to Morgan County was entered on July 12, 1991. One year was wasted—filings were required. Unnecessary hearings and filings took place.

Then, the case arrives in Morgan County. It is still under the small claims provisions of Supreme Court Rules 281 through 289 (see 134 Ill. 2d Rules 281 through 289). It has been generally understood that small claims cases should be, as far as procedural requirements are concerned, kept simple. (See 134 Ill. 2d R. 286.) Motion practice is limited, except for motions under sections 2—619 and 2—1001 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, pars. 2—619, 2—1001). (See 134 Ill. 2d R. 287.) What happens in Morgan

County? Defense counsel, with approval from the court, practically turns this $1,390 case into a Federal monstrosity.

On October 8, 1991, the court gives the case a jury trial date of January 28, 1992. On January 8, 1992, defense counsel files four motions which had been noticed for hearing for that date. Those motions were a motion for continuance, a motion for leave to file motion to strike jury demand, a motion to strike jury demand, and a motion for dismissal. By order of January 9, 1992, the continuance was granted and plaintiff's counsel was granted 21 days to file an amended complaint. The amended complaint was filed on January 31, 1992.

On February 25, 1992, defendant filed a motion for leave to file a motion on the pleadings. The motion for judgment on the pleadings was also filed. On April 8, 1992, plaintiff filed a motion to strike defendant's motion for judgment on the pleadings. On April 4, 1992, defendant moved to withdraw the motion for judgment on the pleadings. This motion was allowed on April 24, 1992.

On April 27, 1992, defendant filed a demand for a bill of particulars. Paragraph Nos. two, three, and four of this motion asked for details by which plaintiff would establish defendant's acquiescence in plaintiff's taking his vacation time after the end of the fiscal year. Plaintiff responded to the demand for a bill of particulars.

The answer to plaintiff's amended complaint was filed on June 30, 1992. On September 1, 1992, a pretrial conference was set for November 17, 1992. Jury trial was set for November 24, 1992.

On September 15, 1992, defendant filed a motion *for leave* to file a motion for summary judgment. This motion was allowed on September 30, 1992.

Defendant filed a motion for leave to conduct limited discovery on October 20, 1992. This motion was noticed for hearing, plaintiff failed to appear, and the motion was granted on October 28, 1992. The motion for summary judgment was not filed until February 1993.

Under a date of October 30, 1992, the court file includes subpoenas for deposition for plaintiff and for the president of Lewis & Clark Community College (plaintiff's new employer).

On January 27, 1993, a new trial date of March 12, 1993, was set. On February 9, 1993, defendant finally filed its motion for summary judgment, together with an eight-page brief, affidavits of the president and the athletic director of MacMurray, and other documents and authorities. This motion was noticed for hearing for March 12, 1993.

Plaintiff filed objections to the motion for summary judgment together with authorities but without opposing affidavits. Summary judgment was granted in favor of defendant on May 12, 1993. Plain-

tiff's motion to reconsider was filed on June 11, 1993. Defendant's seven-page memorandum in opposition to plaintiff's motion to reconsider was filed on June 21, 1993. The motion to reconsider was denied on June 29, 1993, and notice to appeal was filed July 26, 1993.

The issues presented by this case do not justify the exceptions allowed to the pleading prohibitions set forth in Supreme Court Rules 287(a) and (b) (134 Ill. 2d Rules 287(a),(b)). Small claims procedures were adopted for good reasons. One relates to justice at an affordable cost, and another relates to freeing up court calendars. We condemn defense counsel for obvious abuses and criticize the trial court for allowing the abuses to take place. Perhaps attorney fees incurred by defendant could have been better spent for teaching-staff salaries. This case is an example of the worst kind of abuse in small claims courts.

Is there a genuine issue as to whether the contract provision for taking vacation time was changed by acquiescence? Actually, the words *acceptance, waiver*, and *acquiescence* all appear to be used somewhat interchangeably when we discuss the avoidance of specific terms of a written contract. Generally, if one party accepts a certain performance in satisfaction of the obligor's duty, different conditions or promises relating to that duty are waived. (17A Am. Jur. 2d *Contracts* §660 (1991).) The accepting or acquiescing party must have knowledge of or reason to know of the nonoccurrence of the condition of the obligor's duty. See 17A Am. Jur. 2d *Contracts* §659 (1991); Restatement (Second) of Contracts §84 (1981).

Most of the cases cited in defendant's brief are cases dealing with construction contracts. Those cases correctly state that for an acceptance of defective performance to result in a complete discharge, the acceptance must be absolute and unconditional and based upon facts indicating intentional relinquishment of a known right. A mere receipt of defective performance does not discharge a claim for damages. (*Kangas v. Trust* (1982), 110 Ill. App. 3d 876, 881, 441 N.E.2d 1271, 1275; see also *Shaw v. Bridges-Gallagher, Inc.* (1988), 174 Ill. App. 3d 680, 688, 528 N.E.2d 1349, 1354; *Intaglio Service Corp. v. J.L. Williams & Co.* (1981), 95 Ill. App. 3d 708, 714, 420 N.E.2d 634, 639.) The cited cases involved unsatisfactory performance of a contract. Here, we have a term of the contract which, on the face of it, does not relate to the satisfaction of plaintiff's services. However, we recognize the taking of vacation within the contract year might have some value to defendant.

■ It is generally agreed that a party to a contract may, by express agreement or by its own course of conduct, waive its legal right

to strict performance of the covenants of the contract. Certain provisions may be waived by parol agreement, and such a waiver may be shown by parol testimony or shown by facts or circumstances sufficiently indicating an intention to waive or acquiesce. (*Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1017, 436 N.E.2d 598, 603.) Whether a contract has been modified is ordinarily a question of fact, although the sufficiency of the facts presented to constitute such a waiver is a question of law. (*Beverly Bank*, 106 Ill. App. 3d at 1017, 436 N.E.2d at 603; see 17A Am. Jur. 2d *Contracts* §523 (1991).) While the general rule is that silence, inaction, or failure to reject an offer will not constitute an acceptance of an offer (17A Am. Jur. 2d *Contracts* §103 (1991)), a little imagination allows us to realize silence, coupled with knowledge by one party and detrimental reliance by the other party, could result in an acceptance of a change in contract terms. The present case may be an example of such a situation.

We conclude that if MacMurray was aware that plaintiff thought he had authority to take his vacation in July of each calendar year (after the end of the fiscal year in which the vacation was earned) and voiced no objection, then waiver, acceptance, acquiescence, or estoppel took place. See *Shaw*, 174 Ill. App. 3d at 690, 528 N.E.2d at 1355.

Section 2—1005(c) of the Code contains provisions for summary judgment and provides in part:

"The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).

The purpose of summary judgment procedure is to determine whether any genuine issue of material fact exists. (*Mid America Fire & Marine Insurance Co. v. Smith* (1982), 109 Ill. App. 3d 1121, 1123, 441 N.E.2d 949, 950.) Summary judgment should be granted only when the pleadings, depositions, and admissions, together with any affidavits, show there is no genuine issue as to a material fact and that the movant is entitled to judgment as a matter of law. (*Clifford-Jacobs Forging Co. v. Capital Engineering & Manufacturing Co.* (1982), 107 Ill. App. 3d 29, 33, 437 N.E.2d 22, 25; *McBride v. Commercial Bank* (1981), 101 Ill. App. 3d 760, 764, 428 N.E.2d 739, 741.) The court has a duty to construe evidence strongly against movant and liberally in favor of opponent. (*Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 522, 434 N.E.2d 50, 52.) If the facts admit of more than one conclusion or inference, including one unfavorable to the moving

party, the motion should be denied. (*Smith v. Rengel* (1981), 97 Ill. App. 3d 204, 206, 422 N.E.2d 1146, 1148.) In order for a summary judgment to stand, the evidence before the court must have been such that, had it existed at a jury trial, the court would have been required to direct a verdict. (*Corn Belt Bank v. Lincoln Savings & Loan Association* (1983), 119 Ill. App. 3d 238, 243, 456 N.E.2d 150, 154.) The reviewing court will reverse the order granting summary judgment if it determined that a genuine issue of material fact does exist. *Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1099, 441 N.E.2d 860, 863.

Because summary judgment is basically a determination of a question of law, we review the decision *de novo*. In this case, we principally consider the amended complaint, the answer to the bill of particulars, and the affidavits of the president of MacMurray, Edward Mitchell, and the athletic director, Robert Gay. The amended complaint sets forth the fiscal years plaintiff worked and the times he took his vacation. The complaint alleged: "4. Both parties have demonstrated by their course of conduct that vacation earned during a year is redeemed during the subsequent year."

The answer to the bill of particulars states former employees of defendant Robin Cooper and Sean Kelly received compensatory vacation pay. The answer also sets forth what was done for each contract year. The first year began August 15, 1986. The answer for that year stated:

> "Contract provided for 11 months with 1 month vacation. Plaintiff worked the football season and the baseball season until May and then recruited until the end of June. One month vacation between July 1 and August 1, 1987[,] was taken. The athletic director encouraged summer vacations and Plaintiff was unable to take his vacation during the school terms due to his coaching responsibilities. Plaintiff was never approached about this and no one discussed it with him."

Answers for subsequent years also referred to the athletic director encouraging summer vacation.

The affidavit of Edward Mitchell, MacMurray's president, sets forth his authority to hire and that he did not authorize plaintiff's taking the vacation outside the fiscal year. He specifically states in part:

> "5. With respect to the Plaintiff's employment at MacMurray College, based on each Party's respective contractual obligations, the Plaintiff had to take the vacation that he earned in a fiscal year within that same fiscal year or lose his right to take that vacation time.

6. At no time did MacMurray College ever decide to relinquish the Plaintiff's contractual obligation to take his accrued vacation within the fiscal year in which it was earned.

7. At no time did I nor anyone with authority to do so represent to the Plaintiff, either by words or conduct, that he would be allowed to take his accrued vacation in a fiscal year or other period subsequent to the fiscal year in which that vacation was earned.

8. Mr. Robert Gay, who is and at all material times hereto was the Athletic Director for MacMurray College, has never had authority to modify the Plaintiff's contractual obligations or to allow the Plaintiff to take his accrued vacation in a fiscal year or other period subsequent to the fiscal year in which that vacation was earned.

9. Neither I nor anyone with authority to do so has ever represented to the Plaintiff, either by words or conduct, that Mr. Gay has the authority to modify the Plaintiff's contractual obligations or to allow the Plaintiff to take his accrued vacation in a fiscal year or other period subsequent to the fiscal year in which that vacation was earned.

10. While the Plaintiff may claim that he took his vacations with the idea that each vacation taken was for a vacation earned during the previous fiscal year, neither I nor MacMurray College was ever aware that the Plaintiff was taking his vacations with the aforementioned idea in mind. In fact, the first time that I or MacMurray College ever became aware of the Plaintiff's aforementioned reasoning was during the course of this dispute (i.e., after notice of the termination of employment was provided).

11. I and MacMurray College were under the impression that the Plaintiff's vacations, taken in July of each year, were for the same fiscal year in which such vacations were taken."

Robert Gay's affidavit stated in part:

"2. As the Athletic Director, I have no authority to negotiate or modify contractual terms between MacMurray College employees and MacMurray College.

3. I have never represented to the Plaintiff or anyone that I have the authority to negotiate or modify contract terms between MacMurray College employees and MacMurray College.

4. At no time did I represent to the Plaintiff, either by words or conduct[,] that he would be allowed to take his ac-

crued vacation in a fiscal year or other period subsequent to the fiscal year in which that vacation was earned.

5. While the Plaintiff may claim that he took his vacations with the idea that each vacation taken was for a vacation earned during the previous fiscal year, I was never aware that the Plaintiff was taking his vacations with the aforementioned idea in mind. In fact, the first time that I ever became aware of the Plaintiff's aforementioned reasoning was during the course of this dispute (i.e., after notice of the termination of employment was provided).

6. While I may have encouraged members of the Athletic Department staff to take their respective vacations during the summer so as to avoid scheduling conflicts and other inconveniences that would arise if vacations were taken while classes and various sports seasons were in session, I never encouraged nor intended that the members of the Athletic Department staff take their respective vacations in the year following the fiscal year in which the vacations were earned.

7. To the extent that I encouraged the members of the Athletic Department staff to take their respective vacations during the summer, I never intended that they take those vacations in such a manner as to violate or deviate from the provisions of their respective employment contracts.

8. I was under the impression that the Plaintiff's vacations, taken in July of each year, were for the same fiscal year in which such vacations were taken."

Plaintiff did not file counteraffidavits.

■ It is apparent that plaintiff became an employee near the middle of August 1986. Defendant's fiscal year ran from June 1 each year through May 31 of the following year. Therefore, plaintiff's first contract was for a partial year. It appears plaintiff would have had coaching and teaching responsibilities during the entire time of the initial contract. It is established by Robert Gay's affidavit that he encouraged members of the athletic department staff to take their vacations during the summer.

While defendant may not have intended that employees have the right to take vacation time outside the annual contract term, it appears that plaintiff, who was earning vacation under the initial contract, was being encouraged by his superior to take vacation during the summer, which would necessarily be after the end of the initial contract term. Very possibly Robert Gay did not intend to allow varia-

tion from contract terms, but his vacation recommendation may have encouraged plaintiff to delay the time of his vacation.

The president of MacMurray states that Gay had no authority to authorize a contract change. Was this lack of authority known to plaintiff? Would it be reasonable for a young new coach at MacMurray to believe his superior, the athletic director, had authority to allow his first earned vacation to be taken in July 1987? On appeal, the subjects of apparent authority, implied authority, and detrimental reliance were not adequately briefed by counsel for either plaintiff or defendant.

We again recognize this case is (and rightfully so) under small claims procedure. The complaint, bill of particulars, and defendant's two affidavits certainly indicate plaintiff may have been misled to believe he could take vacation after the contract year, regardless of terms in the written contract. A fact question exists as to the issues of apparent authority, implied authority, detrimental reliance, and estoppel. Summary judgment should not have been granted. We see no reason to allow motion practice to further delay the trial.

Reversed and remanded for trial.

COOK and GREEN, JJ., concur.