654 N.E.2d 1109 (1995)
275 Ill.App.3d 452
211 Ill.Dec. 299
LAKE COUNTY GRADING COMPANY OF LIBERTYVILLE, INC., Plaintiff-Appellant,
v.
ADVANCE MECHANICAL CONTRACTORS, INC., Defendant-Appellee.
No. 2-94-1453.
Appellate Court of Illinois, Second District.
August 31, 1995.
*1112 James J. Babowice, Stacey L. Seneczko, Brydges, Riseborough, Morris, Franke & Miller, Waukegan, for Lake County Grading Co. of Libertyville.
C. Jeffrey Thut, Roach, Johnston, Bollman & Thut, Waukegan, for Advance Mechanical Contractors, Inc.
Justice BOWMAN delivered the opinion of the court:
Plaintiff, Lake County Grading Company of Libertyville, Inc., appeals the entry of judgment for defendant Advance Mechanical Contractors, Inc., following a bench trial. We affirm.
The following is a summary of the facts relevant to the issues raised on appeal. In April 1992, defendant submitted a bid to perform construction work for Abbott Laboratories (Abbott). The construction project on which defendant bid was composed of two major parts. The first part, to be performed by defendant, involved the installation of underground lake water, fresh water, and fire water lines. The second part involved the installation of a sanitary sewer line. Because defendant did not possess the equipment necessary to install the sanitary sewer line, it entered into a subcontract with plaintiff for this portion of the work.
The contract required plaintiff to locate and lay out the path of the sewer line which it was to install. On May 20, 1992, defendant notified plaintiff by letter that the correct location for the sewer line was 25 feet west of the location shown on drawings prepared for the project. This location was 10 feet west of the new fresh water line, which defendant was in the process of installing. The May 20 letter further stated that the proper location of the sewer line was to be coordinated with defendant's field foreman. Ultimately, plaintiff mislocated the sewer line. Rather than installing the sewer line 10 feet west of the fresh water line, plaintiff installed it 19.87 feet west of the fresh water line.
On June 30, 1992, representatives of Abbott, plaintiff, and defendant met at the Abbott construction site. At this meeting, the parties discovered for the first time that the location of the sewer line was in conflict with the proposed foundation for a structure on Abbott's property known as building R12/ R13. However, according to the testimony of Timothy Klein, defendant's plumbing division manager, defendant did not know as of June 30, 1992, that plaintiff had mislocated the sewer line. Rather, Klein testified, defendant assumed the conflict between the sewer line and the R12/R13 building was due *1113 to Abbott's extension of the building's foundation.
Abbott's site construction manager, Elizabeth Riordan, testified that she became aware of the conflict between the R12/R13 foundation and the sewer line on June 30, 1992. At this time, however, she did not know the cause of the conflict. On July 1, 1992, Abbott issued a "speed letter" requesting a price proposal for relocating the sewer line. According to Riordan, when Abbott issued the speed letter, it did not know who was at fault for the conflict and wanted to know the extent of its exposure. Riordan confirmed that the true cause of the conflict, plaintiff's mislocation of the sewer line, did not come to light until some time after the June 30 meeting.
Plaintiff responded to the speed letter with a proposal to relocate the sewer line and remedy the conflict with the R12/R13 foundation. On July 6, 1992, defendant directed plaintiff to proceed on a "time and materials" basis, and the sewer line was moved accordingly. Klein stated that "a couple of weeks" after defendant authorized plaintiff to relocate the sewer line, and after the relocation work was complete, he discovered that plaintiff had mislocated it the first time. According to Klein, if plaintiff had installed the sewer line as instructed in the May 20 letter, it would not have been in conflict with the R12/R13 building. Following the revelation that plaintiff had mislocated the sewer line, defendant refused to pay for its relocation. However, defendant did pay in full for the original installation, making payments on August 4, 1992, and January 19, 1993.
Plaintiff filed a two-count complaint against defendant seeking payment for the relocation of the sewer line. Count I alleged a breach of contract; count II alleged a violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/2 (West 1994)). Specifically, the complaint alleged that on or about July 6, 1992, plaintiff entered into a contract under which plaintiff agreed to relocate the sewer line on Abbott's property. The complaint alleged that plaintiff performed the work called for but that defendant breached the contract by failing to pay for the work. Count II repeated the factual allegations of count I and also alleged, on information and belief, that at the time defendant engaged plaintiff to relocate the sewer line defendant had no intention of paying for it. Finally, count II alleged that plaintiff relied on defendant's misrepresentations that it would pay for the relocation. Count II did not allege any evidentiary facts; instead, it simply incorporated the facts contained in count I.
Pursuant to defendant's motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1994)), the trial court found that the claim did not fall within the ambit of the Act because it involved only an isolated breach of contract between entities which were not consumers of each other's goods or services. Accordingly, it dismissed count II of the complaint without prejudice. Plaintiff then filed an amended count II which was identical to the original in all respects except for the addition of an allegation that "Plaintiff and Defendant have been engaged in another project and Plaintiff has bid on a number of projects at the request of the Defendant." Pursuant to a second section 2-615 motion filed by defendant, the trial court dismissed count II of the amended complaint and denied plaintiff's motion for leave to file a second amended complaint.
Regarding count I, the trial court allowed defendant to assert the affirmative defense of setoff. In support of its setoff defense, defendant alleged that plaintiff's breach of the original contract for the installation of the sewer line necessitated the relocation of the sewer line. Defendant asserted that, because plaintiff had breached the original contract, it was entitled to set off the amounts claimed by plaintiff for the relocation. In response to this affirmative defense, plaintiff contended that defendant accepted plaintiff's performance under the original contract and waived its right to seek a setoff of the amounts due on the relocation contract when it authorized plaintiff to proceed with the relocation on a "time and materials" basis.
The cause proceeded to trial. After hearing testimony and receiving various documentary exhibits, the trial court entered judgment for defendant. On appeal, plaintiff *1114 contends (1) the trial court erred in dismissing count II with prejudice; and (2) the trial court's finding that defendant was entitled to a setoff is against the manifest weight of the evidence.
Plaintiff's first contention is that the trial court erred in dismissing count II. In support of this contention, plaintiff argues that (1) a single deceptive act is sufficient to permit recovery under the Act; and (2) the Act's protections are not limited to consumers. Plaintiff further argues that the trial court abused its discretion in denying plaintiff's motion for leave to file a second amended complaint.
A complaint should be dismissed under section 2-615 for failure to state a cause of action only when it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. (Ogle v. Fuiten (1984), 102 Ill.2d 356, 360-61, 80 Ill.Dec. 772, 466 N.E.2d 224; Carter v. New Trier East High School (1995), 272 Ill.App.3d 551, 555, 208 Ill.Dec. 963, 650 N.E.2d 657.) This broad statement, however, should not be interpreted as an adoption of notice pleading. (Capitol Indemnity Corp. v. Stewart Smith Intermediaries, Inc. (1992), 229 Ill.App.3d 119, 123, 171 Ill.Dec. (1992), 229 Ill.App.3d 119, 123, 171 Ill.Dec. 52, 593 N.E.2d 872.) Illinois remains a fact-pleading jurisdiction. Levin v. King (1995), 271 Ill.App.3d 728, 735, 208 Ill.Dec. 186, 648 N.E.2d 1108.
While a section 2-615 motion to dismiss admits all well-pleaded facts as true, it does not admit conclusions of law or factual conclusions which are unsupported by allegations of specific facts. (Carter, 272 Ill.App.3d at 555, 208 Ill.Dec. 963, 650 N.E.2d 657; Capitol, 229 Ill.App.3d at 123, 171 Ill.Dec. 52, 593 N.E.2d 872.) If, after disregarding any legal and factual conclusions, the complaint does not allege sufficient facts to state a cause of action, the motion to dismiss should be granted. (Carter, 272 Ill.App.3d at 555, 208 Ill.Dec. 963, 650 N.E.2d 657.) In ruling on a motion to dismiss for failure to state a cause of action, the complaint's factual allegations are to be interpreted in the light most favorable to the plaintiff, but factual deficiencies may not be cured by liberal construction. (Carter, 272 Ill.App.3d at 555, 208 Ill.Dec. 963, 650 N.E.2d 657.) A reviewing court may affirm the dismissal of a claim for failure to state a cause of action on any legally valid basis appearing in the record. Capitol, 229 Ill.App.3d at 123, 171 Ill.Dec. 52, 593 N.E.2d 872.
After reviewing count II in light of the above standards, we conclude that the trial court correctly ruled that the Act does not apply. Section 2 of the Act provides in pertinent part:
"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, * * * are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1994).
Plaintiff is correct in noting that the protections of the Act are not limited only to consumers. (Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc. (1991), 214 Ill.App.3d 1073, 1082, 158 Ill.Dec. 185, 573 N.E.2d 1370.) Plaintiff is further correct in noting that a single deceptive act may support recovery under the Act. (Rubin v. Marshall Field & Co. (1992), 232 Ill.App.3d 522, 532, 173 Ill.Dec. 714, 597 N.E.2d 688.) However, despite the broad language of section 2, courts have recognized that it was not intended to cover all commercial transactions regardless of the relationship between the parties involved. (See, e.g., Bankier v. First Federal Savings & Loan Association (1992), 225 Ill.App.3d 864, 874, 167 Ill.Dec. 750, 588 N.E.2d 391 ("[t]he Act was not intended to extend to every transaction between contracting parties").) Thus, to determine whether the Act applies, we must examine the present facts in light of prior case law.
According to the parties, the cases of Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc. (1989), 190 Ill.App.3d 524, 137 Ill.Dec. 409, 546 N.E.2d 33, and Century Universal Enterprises, Inc. v. Triana *1115 Development Corp. (1987), 158 Ill.App.3d 182, 110 Ill.Dec. 229, 510 N.E.2d 1260, define the scope of the Act's protections. In Century Universal, which involved a dispute between a financier and developer over a contract, we held that disputes between businessmen over a contract were not covered by the Act where the businessmen were not consumers of each other's goods or services. (Century Universal, 158 Ill.App.3d at 199, 110 Ill.Dec. 229, 510 N.E.2d 1260.) We further held that the Act "`does not apply to every situation where * * * the only actual controversy is whether an isolated breach of contract occurred.'" Century Universal, 158 Ill.App.3d at 198, 110 Ill.Dec. 229, 510 N.E.2d 1260, quoting Exchange National Bank v. Farm Bureau Life Insurance Co. (1982), 108 Ill.App.3d 212, 215, 63 Ill. Dec. 884, 438 N.E.2d 1247.
In Downers Grove, we recognized that the Act protects businessmen as well as consumers and that Century Universal's narrow reading of the Act may not be appropriate in all cases. In Downers Grove, both the plaintiff and the defendant were automobile dealers whose business included the servicing of Saab vehicles. The plaintiff sued over a brochure published by the defendant which stated that it charged significantly less than the plaintiff for similar maintenance services on Saab vehicles. One count of the plaintiff's complaint alleged that the contents of the brochure, which allegedly disparaged the plaintiff's services, violated the Act. Citing Century Universal, the defendant contended that the Act did not apply because the plaintiff was a business that was not suing as a consumer. After reviewing the language of the Act and the relevant case law, the Downers Grove court concluded that the plaintiff's claim was properly brought under the Act and that Century Universal should be limited to its facts. Downers Grove, 190 Ill. App.3d at 532-33, 137 Ill.Dec. 409, 546 N.E.2d 33.
According to Downers Grove, Century Universal "should not be read * * * to hold that all disputes between businesses which are not consumers of each other's goods or services are not covered under the Act." (Downers Grove, 190 Ill.App.3d at 533, 137 Ill.Dec. 409, 546 N.E.2d 33.) Rather, as Downers Grove recognized, there are some cases where the Act applies despite the fact that the parties are not consumers of each other's goods or services. Where a dispute involves two businesses that are not consumers, the proper test is "whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." (Downers Grove, 190 Ill.App.3d at 534, 137 Ill.Dec. 409, 546 N.E.2d 33.) On the facts before it, the Downers Grove court had little difficulty determining that consumer protection concerns were implicated because the plaintiff's complaint alleged that the defendant had distributed to consumers approximately 15,000 brochures containing allegedly false statements regarding the plaintiff's business practices. Downers Grove, 190 Ill.App.3d at 534, 137 Ill.Dec. 409, 546 N.E.2d 33.
Shortly after our decision in Downers Grove, the legislature amended the Act to provide specifically that "[p]roof of a public injury, a pattern, or an effect on consumers generally shall not be required" to recover damages under the Act. (Pub. Act 86-801, eff. January 1, 1990; 815 ILCS 505/10a (West 1994).) Plaintiff maintains that this amendment demonstrates the legislature's intent to bring claims such as the one it asserts in the present case within the purview of the Act. Inexplicably, defendant's brief fails to address the effect of this amendment. However, despite this deficiency in defendant's brief, we believe the 1990 amendment should not be viewed as a repudiation of Downers Grove.
Although the amended section 10a states that plaintiffs may recover damages without showing "an effect on consumers generally," post-amendment case law has continued to recognize that the Act does not apply to every commercial transaction regardless of the relationship between the parties. (See, e.g., Bankier, 225 Ill.App.3d at 874, 167 Ill. Dec. 750, 588 N.E.2d 391.) Courts continue to adhere to the rule that "[e]very individual breach of contract between two parties does not amount to a cause of action under the Act." (Law Offices of William J. Stogsdill v. Cragin Federal Bank for Savings (1995), 268 *1116 Ill.App.3d 433, 437-38, 206 Ill.Dec. 559, 645 N.E.2d 564; see also American Airlines, Inc. v. Wolens (1995), 513 U.S. ___, ___, 115 S.Ct. 817, 826, 130 L.Ed.2d 715, 728 (stating that a breach of contract, without more, does not amount to a cause of action cognizable under the Act).) Indeed, if litigants could invoke the Act merely by alleging an intentional or fraudulent breach of a contract, common-law breach of contract actions would be supplemented in every case with an additional and redundant remedy under the Act. (Golembiewski v. Hallberg Insurance Agency, Inc. (1994), 262 Ill.App.3d 1082, 1093, 200 Ill.Dec. 113, 635 N.E.2d 452.) This could not have been the legislature's intent. See Neumann v. John Hancock Mutual Life Insurance Co. (N.D.Ill.1990), 736 F.Supp. 182,184-85 (stating that the Act was not intended to replace Illinois' common law of contracts); Newman-Green, Inc. v. Alfonzo-Larrain (N.D.Ill.1984), 590 F.Supp. 1083, 1086 (same; preamendment).
Thus, since Downers Grove and the 1990 amendment, courts have consistently resisted attempts by litigants to portray otherwise ordinary breach of contract claims as causes of action under the Act. (See, e.g., Golembiewski, 262 Ill.App.3d at 1093, 200 Ill.Dec. 113, 635 N.E.2d 452.) Accordingly, the following language of the rule stated in Downers Grove remains viable: where a plaintiff attempts to allege a violation of the Act in a case which appears on its face to involve only a breach of contract, the relevant inquiry is "whether the alleged conduct * * * implicates consumer protection concerns." Downers Grove, 190 Ill.App.3d at 534, 137 Ill.Dec. 409, 546 N.E.2d 33; see also Empire Home Services, Inc. v. Carpet America, Inc. (1995), 274 Ill.App.3d 666, 669, 210 Ill.Dec. 657, 653 N.E.2d 852 (stating that liability under the Act is limited to conduct that implicates consumer protection concerns); Hill v. Names & Addresses, Inc. (1991), 212 Ill.App.3d 1065, 1090, 157 Ill.Dec. 66, 571 N.E.2d 1085 (same); Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc. (N.D.Ill.1987), 657 F.Supp. 1486, 1493 (same; preamendment).
Viewing count II of plaintiff's complaint in light of the Downers Grove standard, we conclude that it does not fall within the purview of the Act. There are two bases for our conclusion. First, count II is deficient because, on its face, it does not implicate consumer protection concerns. There is no inherent consumer interest implicated in a construction contract between a general contractor and a subcontractor. (Cf. Downers Grove, 190 Ill.App.3d at 534, 137 Ill.Dec. 409, 546 N.E.2d 33 (holding that allegedly deceptive brochure which was distributed to 15,000 consumers could form basis of cause of action under the Act).) Nor does plaintiff explain how its particular breach of contract claim involves consumer protection concerns. Plaintiff states only that the distinction between those cases which implicate consumer protection concerns and those which do not is "not so easily applied in practice." While this statement may be true, it does not assist us in evaluating the sufficiency of plaintiff's attempt to allege a violation of the Act. Thus, plaintiff has failed to demonstrate how count II implicates consumer protection concerns.
Second, count II is deficient because it is factually identical to count I. The only meaningful difference between the two counts is that count II states, on information and belief, that at the time the parties contracted for the relocation of the sewer line defendant had no intention of paying plaintiff for the work. This conclusory allegation is insufficient to transform what is otherwise a garden-variety breach of contract claim into a cause of action under the Act. To hold otherwise would permit plaintiffs to supplement or replace every breach of contract claim with an additional and redundant remedy under the Act, a result unintended by the legislature. (See Golembiewski, 262 Ill. App.3d at 1093, 200 Ill.Dec. 113, 635 N.E.2d 452; Neumann v. John Hancock Mutual Life Insurance Co. (N.D.Ill.1990), 736 F.Supp. 182, 184-85.) We therefore find no error in the trial court's dismissal of count II.
We further conclude that the trial court did not abuse its discretion in denying plaintiff's motion for leave to file a second amended complaint. In Illinois, courts are encouraged to allow liberally the amendment of pleadings. (Lee v. Chicago Transit Authority *1117 (1992), 152 Ill.2d 432, 467, 178 Ill.Dec. 699, 605 N.E.2d 493; Jeffrey M. Goldberg & Associates Ltd. v. Collins Tuttle & Co. (1994), 264 Ill.App.3d 878, 885, 202 Ill.Dec. 367, 637 N.E.2d 1103.) Notwithstanding this policy, the right to amend is not absolute. (Lee, 152 Ill.2d at 467, 178 Ill.Dec. 699, 605 N.E.2d 493; Misselhorn v. Doyle (1994), 257 Ill.App.3d 983, 987, 195 Ill.Dec. 881, 629 N.E.2d 189.) A trial court should consider several factors in determining whether to permit an amendment, including: (1) whether the amendment would cure a defect in the pleading; (2) whether the other party would be surprised or prejudiced by the amendment; (3) the timeliness of the proposed amendment; and (4) whether there were previous opportunities to amend. (Lee, 152 Ill.2d at 467-68, 178 Ill.Dec. 699, 605 N.E.2d 493.) The decision whether to grant leave to amend a pleading rests within the sound discretion of the trial court whose ruling will not be disturbed on review absent an abuse of that discretion. Lee, 152 Ill.2d at 467, 178 Ill.Dec. 699, 605 N.E.2d 493.
We note preliminarily that plaintiff's failure to include a copy of the proposed second amended complaint in the record on appeal impedes our ability to review the trial court's denial of leave to amend. As numerous panels of the appellate court have stated:
" `[A] party desiring to file an amended pleading should include it in the record. If this is not done, the reviewing court is not in a position to say that justice would be served by giving leave to amend. In such circumstances, the court presumes that another attempt at pleading would be fruitless.' " (Misselhorn, 257 Ill.App.3d at 987, 195 Ill.Dec. 881, 629 N.E.2d 189, quoting Kostur v. Indiana Insurance Co. (1989), 192 Ill.App.3d 859, 866, 140 Ill.Dec. 34, 549 N.E.2d 685.)
(See also Eyman v. McDonough District Hospital (1993), 245 Ill.App.3d 394, 397, 184 Ill.Dec. 502, 613 N.E.2d 819; Mendelson v. Ben A. Borenstein & Co. (1992), 240 Ill. App.3d 605, 619, 181 Ill.Dec. 114, 608 N.E.2d 187.) Thus, plaintiff's failure to include the proposed amendment in the record provides a sufficient basis for affirmance of the trial court.
Moreover, based on our discussion of the legal deficiencies of plaintiff's attempt to portray its breach of contract claim as a cause of action under the Act, we find no abuse of discretion in the trial court's decision to deny leave to amend the complaint. As we stated above, a review of the pertinent case law demonstrates that plaintiff's claim simply does not fall within the bounds of the Act. Thus, further attempts to amend would have been futile.
Plaintiff's second contention relates to defendant's affirmative defense of setoff. Plaintiff's argument on this issue is threefold. First, plaintiff appears to argue, in an ambiguous fashion, that setoff is not available in a situation where two separate contracts are involved. Second, plaintiff asserts in its reply brief that defendant's affirmative defense of setoff should have been labelled a counterclaim and that this alleged failure to label properly the affirmative defense constitutes reversible error. Third, plaintiff argues the trial court's finding that defendant did not waive its right to assert setoff as an affirmative defense is against the manifest weight of the evidence. Because plaintiff's first and second arguments relate to the procedural propriety of defendant's assertion of setoff as an affirmative defense, we will address them together.
Traditionally, courts have held that the difference between a counterclaim and an affirmative defense is that a counterclaim seeks affirmative relief whereas an affirmative defense merely attempts to defeat a plaintiff's cause of action. (See Dudek, Inc. v. Shred Pax Corp. (1993), 254 Ill.App.3d 862, 871, 193 Ill.Dec. 653, 626 N.E.2d 1204.) Presently, the procedural concept of setoff is subsumed under the term "counterclaim" even where no affirmative relief is sought. (See 735 ILCS 5/2-608 (West 1994); Decker v. St. Mary's Hospital (1994), 266 Ill.App.3d 523, 528, 203 Ill.Dec. 444, 639 N.E.2d 1003; Hentze v. Unverfehrt (1992), 237 Ill.App.3d 606, 612, 178 Ill.Dec. 280, 604 N.E.2d 536.) Setoff most commonly appears as a counterclaim filed by a defendant, based upon a transaction extrinsic to that which is the basis of the plaintiff's cause of action. Bank *1118 of Chicago-Garfield Ridge v. Park National Bank (1992), 237 Ill.App.3d 1085, 1091, 179 Ill.Dec. 240, 606 N.E.2d 72; Barkei v. Delnor Hospital (1990), 207 Ill.App.3d 255, 264, 152 Ill.Dec. 175, 565 N.E.2d 708.
In the present case, regardless of whether the affirmative defense of setoff should properly have been labelled a counterclaim under section 2-608, there can be no doubt that it was asserted in a procedurally appropriate manner. To adopt the familiar definition of a setoff, it was "a counterdemand interposed by a defendant against a plaintiff in a lawsuit, arising out of a transaction extrinsic to plaintiff's cause of action." (Bank of Chicago, 237 Ill.App.3d at 1091, 179 Ill.Dec. 240, 606 N.E.2d 72, citing, e.g., Peterson v. Iris Theatre Co. (1920), 218 Ill.App. 416, 420; Luther v. Mathis (1918), 211 Ill.App. 596, 601; see also Black's Law Dictionary 1372 (6th Ed.1990).) Thus, we find no error in the trial court's decision to allow defendant to assert a setoff defense. Further, plaintiff's argument that setoff is improper when it is based on a transaction independent of the plaintiff's cause of action is inconsistent with the definition of setoff found in Bank of Chicago and the cases cited therein.
We now turn to the trial court's ruling that defendant did not waive its right to assert the defense of setoff. Plaintiff asserts that defendant waived its right to strict performance of the terms of the original contract when defendant agreed to the relocation of the sewer line "armed with the knowledge" that its position was in conflict with the R12/R13 foundation. Thus, plaintiff argues, defendant lulled plaintiff with a false assurance that strict compliance with the original contract's terms would not be required, and later asserted its right to strict compliance by asserting setoff. Alternatively, plaintiff argues that defendant should be estopped from asserting its right to strict compliance with the terms of the original contract.
Waiver is the voluntary and intentional relinquishment of a known and existing right and may be either express or implied. (Wells v. Minor (1991), 219 Ill. App.3d 32, 45, 161 Ill.Dec. 691, 578 N.E.2d 1337.) The related doctrine of estoppel refers to the effect of a party's voluntary conduct which precludes it from asserting rights which might otherwise have existed against another person who has detrimentally relied upon such conduct. (See Byron Community Unit School District No. 226 v. Dunham-Bush, Inc. (1991), 215 Ill.App.3d 343, 348, 158 Ill.Dec. 990, 574 N.E.2d 1383; American States Insurance Co. v. Action Fire Equipment, Inc. (1987), 157 Ill.App.3d 34, 40, 109 Ill.Dec. 258, 509 N.E.2d 1097.) The difference between waiver and estoppel is that waiver is the voluntary relinquishment of a known right, whereas estoppel may arise even where there is no intention to relinquish any right. (Vaughn v. Speaker (1988), 126 Ill.2d 150, 161-62, 127 Ill.Dec. 803, 533 N.E.2d 885.) Although waiver and estoppel are distinct concepts, courts recognize that there are situations where both can apply. (See, e.g., Hamilton v. Williams (1991), 214 Ill.App.3d 230, 241-42, 158 Ill.Dec. 91, 573 N.E.2d 1276.) In the case at bar, the parties and the trial court have treated plaintiff's waiver and estoppel arguments as one and we therefore address them together.
A party to a contract may waive, by express agreement or by its course of conduct, its legal right to strict performance of the terms of a contract. (See Martz v. MacMurray College (1993), 255 Ill.App.3d 749, 752-53, 194 Ill.Dec. 491, 627 N.E.2d 1133.) The waiver doctrine is intended to prevent the waiving party from lulling another into a false belief that strict compliance with a contractual duty will not be required and then suing for noncompliance. Giannetti v. Angiuli (1994), 263 Ill.App.3d 305, 313, 200 Ill.Dec. 744, 635 N.E.2d 1083; Melrose Park National Bank v. Carr (1993), 249 Ill. App.3d 9, 16, 188 Ill.Dec. 269, 618 N.E.2d 839.
A court will apply estoppel where: (1) the party against whom estoppel is asserted has misrepresented or concealed a material fact; (2) the estopped party had either actual or implied knowledge that the representation was untrue at the time it was made; (3) the party asserting estoppel was unaware that the representation was untrue both at the time it was made and at the time it was acted upon; (4) the estopped party *1119 intended or expected the other party to act upon the misrepresentation; (5) the party asserting estoppel did rely or act upon the misrepresentation; and (6) the party asserting estoppel would be prejudiced if the court did not apply estoppel. Hamilton, 214 Ill. App.3d at 242, 158 Ill.Dec. 91, 573 N.E.2d 1276; see also Vaughn, 126 Ill.2d at 162-63, 127 Ill.Dec. 803, 533 N.E.2d 885.
Where the material facts are in dispute, or where reasonable minds might differ in the inferences to be drawn from undisputed facts, the existence of waiver or estoppel is a question of fact. (Giannetti, 263 Ill.App.3d at 313, 200 Ill.Dec. 744, 635 N.E.2d 1083; Melrose Park National Bank, 249 Ill.App.3d at 16, 188 Ill.Dec. 269, 618 N.E.2d 839; Sohaey v. Van Cura (1992), 240 Ill.App.3d 266, 282, 180 Ill.Dec. 359, 607 N.E.2d 253.) A reviewing court should not overturn a trial court's findings of fact merely because it does not agree with them or because it might have reached a different result. (In re Application of the County Treasurer (1989), 131 Ill.2d 541, 549, 137 Ill.Dec. 561, 546 N.E.2d 506.) In a bench trial, as the finder of fact, the trial judge is in a superior position to observe the demeanor of the witnesses while testifying, to judge their credibility, and to determine the weight their testimony should receive. (County Treasurer, 131 Ill.2d at 549, 137 Ill.Dec. 561, 546 N.E.2d 506; Pottinger v. Pottinger (1992), 238 Ill.App.3d 908, 919, 179 Ill.Dec. 116, 605 N.E.2d 1130.) Accordingly, the trial court's findings of fact are given great deference and will not be set aside unless they are against the manifest weight of the evidence. County Treasurer, 131 Ill.2d at 549, 137 Ill. Dec. 561, 546 N.E.2d 506; State Farm Mutual Automobile Insurance Co. v. Dreher (1989), 190 Ill.App.3d 182, 184-85, 138 Ill. Dec. 131, 547 N.E.2d 1.
Considered in light of the above standards, the trial court's finding that defendant did not waive its right to strict performance of the terms of the original contract is not against the manifest weight of the evidence. The testimony of Timothy Klein, if believed, is sufficient to overcome plaintiff's argument that waiver and estoppel bar defendant from claiming a setoff. Klein testified unequivocally that on July 6, 1992, when he authorized plaintiff to proceed with the relocation of the sewer line, he was not aware that plaintiff initially had mislocated it. Rather, he stated that when he authorized the relocation, he believed the conflict between the R12/R13 foundation and the sewer line was the result of Abbott's extension of the foundation. He further testified that he did not discover that plaintiff had improperly installed the sewer line until after plaintiff had completed the relocation.
Klein's account of his discovery of the cause of the conflict between the R12/R13 foundation and the sewer line was corroborated by the testimony of Elizabeth Riordan, Abbott's site construction manager. She stated that, initially, she did not know the cause of the conflict between the sewer line and the R12/R13 foundation, but later discovered that it was due to plaintiff's mislocation of the sewer line.
In short, Klein's testimony, as corroborated by Riordan, establishes that while defendant may have known of the existence of the conflict between the sewer line and the R12/R13 foundation when it authorized the relocation, it did not know the cause of the conflict. Thus, there is sufficient evidence to support the conclusion that defendant did not intentionally relinquish its right to strict performance of the original contract. (See Kangas v. Trust (1982), 110 Ill.App.3d 876, 881, 65 Ill.Dec. 757, 441 N.E.2d 1271 (holding, in a construction contract case, that, for a voluntary acceptance of defective performance to work a complete discharge, the acceptance must be absolute and unconditional); see also Shaw v. Bridges-Gallagher, Inc. (1988), 174 Ill.App.3d 680, 688, 124 Ill.Dec. 241, 528 N.E.2d 1349 (same).) Nor does the evidence support the conclusion that defendant knowingly misrepresented or concealed material facts so as to create an estoppel. In fact, plaintiff has not indicated with any specificity what evidence in the record would support a finding of estoppel. Consequently, the trial court reasonably could conclude that defendant's July 6, 1992, authorization for plaintiff to proceed with the relocation of the sewer line gave rise to neither waiver nor estoppel.
*1120 We acknowledge that the testimony of plaintiff's witnesses conflicted sharply with that of Klein and Riordan. However, based upon the trial court's judgment, it resolved those conflicts in favor of defendant. Plaintiff's counsel acknowledged this in his closing argument, where he stated that the application of waiver and estoppel "comes down to strictly an issue of credibility." We agree with this characterization. Because the existence of waiver and estoppel is a factual issue resting on credibility findings, we cannot conclude that the trial court's decision is against the manifest weight of the evidence.
For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.
Affirmed.
THOMAS and HUTCHINSON, JJ., concur. *1121 *1222 *1223