2023 IL App (4th) 220561-U
No. 4-22-0561
Order filed March 29, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| YINGLING SERVICES, INC., d/b/a ServiceMaster Cleaning & Restoration, | ) ) ) | Appeal from the Circuit Court of Brown County. |
|     Plaintiff and Counterdefendant-Appellee, | ) ) ) | |
| v. | ) ) | No. 21-L-1 |
| PAM BICK, | ) ) | Honorable |
|     Defendant and Counterplaintiff-Appellant. | ) ) ) | Jerry J. Hooker, Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Birkett and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in finding that defendant waived her right to arbitration under the parties' contract. Defendant never filed a written demand for arbitration as the contract required. Her purported written demand was a mere suggestion, not a demand, that the parties undergo arbitration. Also, defendant's counterclaim for specific performance of the contract was an affirmative effort to seek a judicial forum for the dispute instead of arbitration.

¶ 2    Plaintiff, Yingling Services, Inc., d/b/a ServiceMaster Cleaning and Restoration, filed a complaint against defendant, Pam Bick, to recover money allegedly due for cleaning and restoring her Mt. Sterling home after a fire severely damaged it. Defendant counterclaimed for specific

performance of the contract. After a bench trial, the trial court held for plaintiff on both the complaint and the counterclaim. Defendant appeals, contending that the court erred in refusing to enforce a contract clause requiring arbitration. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiff's complaint, filed February 17, 2021, alleged that defendant owed $52,196.96 for cleanup and repair work plaintiff performed on her house after a fire on March 3, 2020. Plaintiff attached a copy of a "Work Authorization & Consumer Rights Acknowledgement" (contract). The contract was dated March 4, 2020, and signed by defendant and Randy Sitze, plaintiff's employee. Paragraph 1 of the contract stated that plaintiff's obligation was "to *** secure the PROPERTY from further damage and to commence restoration procedures and complete reconstruction as reasonably necessary to restore the property and contents to as near their pre-loss condition as reasonable possible." As pertinent here, paragraph 5 read:

> "Dispute Resolution: Any controversy arising out of this contract or the business relationship between the parties shall be settled by binding arbitration. Either party may demand arbitration by serving upon the other written demand for arbitration. The parties each waive any right to trial by court or by jury for any dispute arising under this contract or the relationship between the two."

¶ 5     Defendant answered the complaint, denying that she voluntarily entered into the contract. She also filed a counterclaim, which she did not specifically plead in the alternative. The counterclaim alleged that (1) defendant signed the contract without being informed that it allowed

---

[1]By order of the supreme court (Ill. S. Ct., M.R. 31650 (eff. Feb. 6, 2023)), this appeal was transferred from the Fourth District to the Second District.

plaintiff to rebuild the home as well as clean and board it up, (2) plaintiff did extensive rebuilding despite her protests, and (3) plaintiff did not perform the rebuilding satisfactorily. The counterclaim asked for an order requiring specific performance of the contract.

¶ 6 After the parties conducted extensive discovery, the case proceeded to a bench trial. Because the sole issue on appeal is whether the court erred in holding that defendant waived her contractual right to arbitration, we shall not detail the evidence relating to the other issues below.

¶ 7 Plaintiff called Seth Yingling (Seth), who oversaw its construction division. On March 3, 2020, an adjuster for State Farm, defendant's insurer, called Seth about the fire. Afterward, defendant contacted him. Seth and Sitze met with defendant, and defendant and Sitze signed the contract. The repair project was completed in November 2020 at a cost of $251,114.46. On a date not clear from the record, plaintiff sent defendant an invoice for $51,067.69, the amount still due and owing.

¶ 8 On recross-examination, Seth identified a copy of a text message that defendant sent him on February 10, 2021. He quoted the message: " 'You might consider mediation. I'm prepared to get a lawyer. This job is incomplete, unsatisfactory, and needs immediate attention. I'm suffering here.' "

¶ 9 Plaintiff rested. Defendant testified as follows. On March 4, 2020, she signed the contract. She claimed the contract was for "board[ing] up the windows." In January 2021, she received a check from State Farm to cover plaintiff's repairs. After a conversation with State Farm, she tore up the check. Later, State Farm issued another check, which defendant deposited into her personal bank account. She had not spent any of those funds.

¶ 10 Defendant testified that she was dissatisfied with plaintiff's performance. She was asked when she informed Seth that she intended to seek arbitration:

"Q. [I]n February, did you have a final in-person meeting with [Seth]?

A. In February of 2021?

Q. Yes.

A. Yes.

Q. Okay. During that time, had you expressed to [Seth] your intention to go into arbitration?

A. I did.

Q. When did you tell him that?

A. In text on February 10th, and it was discussed at the meeting at my house on February 2nd.

Q. When you had those discussions with [Seth] on February 2nd, what did you tell him about that?

A. I asked him what we were going to do about this house. And we weren't going to come to an agreement there. It was a really bad place."

¶ 11    On redirect examination, defendant testified that she sent the February 10, 2021, text message because plaintiff had filed a lien against her house. She told Seth that he "might want to try mediation first" because she would "go to court if [he] want[ed]."

¶ 12    In her closing argument, defendant contended that, based on plaintiff's inadequate work, the trial court should deny the complaint. She argued next that the contract bound plaintiff to arbitrate the dispute and that her text message of February 10, 2021, told Seth that she intended "to move forward in that[,]" *i.e.*, arbitration—although, as a layperson, she had used the term "mediation." Last, she argued that the court should grant her counterclaim and order specific performance of the contract. Defendant did not contend that the contract was invalid in any way.

¶ 13    The trial court entered a written judgment for plaintiff, awarding it contractual damages and denying defendant's counterclaim. As pertinent here, the court stated:

"[Defendant] argued that she demanded arbitration pursuant to the contract, by a text message. The Court disagrees. The text from [defendant] said you may want to consider arbitration [*sic*] because she was ready to get a lawyer. That text is not a written demand for arbitration."

¶ 14    Defendant timely appealed.

¶ 15                                        II. ANALYSIS

¶ 16    On appeal, defendant raises one contention: the trial court erred in holding that she waived her contractual right to arbitration. Defendant argues that, because her answer contested the existence of a binding contract, she was not required to invoke her right to arbitration until the trial court had ruled that there was a binding contract. She argues alternatively that her text message of February 10, 2021, invoked her contractual right to arbitration. Plaintiff responds that the evidence supports the trial court's finding that defendant waived her right to arbitration by failing to make the demand that the contract required and by acting inconsistently with any intent to seek arbitration instead of litigation. For the following reasons, we agree with plaintiff.

¶ 17    A party may waive the contractual right to arbitration by acting inconsistently with the contract's arbitration clause. *Kostakos v. KSN Joint Venture No. 1*, 142 Ill. App. 3d 533, 536 (1986). The trial court's finding that defendant waived her contractual right may not be disturbed unless it was against the manifest weight of the evidence. See *Lake County Grading Company of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 463-64 (1995). Here, we conclude that defendant did so, as shown by her actions throughout the case.

¶ 18    Defendant contends in part that, because her answer contested the existence of a binding contract, she was not required to demand arbitration until the trial court first ruled that there was a binding contract. In this context, defendant's argument is not sound.

¶ 19    Where a defendant, from the inception of the litigation, contests the existence of a valid and binding contract, waiver of the contractual right to arbitration cannot occur until the trial court has found such contract to exist. *Epstein v. Yoder*, 72 Ill. App. 3d 966, 972 (1979). However, when the defendant admits the existence of the contract while submitting to a court of law the issues that contractually are the subject of arbitration, the defendant has waived his or her right to arbitration. *Id.*

¶ 20    At trial, defendant conceded that the contract was valid, except to the limited extent that it allowed plaintiff to rebuild the house.[2] And, in her closing argument, she abandoned *any* claim that the contract was invalid and, indeed, relied on the assumption of a fully valid contract to support her counterclaim for specific performance and her claim that the dispute should have been arbitrated. Thus, in closing argument, if not before, defendant waived her right to arbitration.

¶ 21    Defendant also contends that her actions, well before the case went to trial, amounted to invoking her contractual right to arbitration. For the reasons that follow, we disagree.

¶ 22    At no time before trial did defendant invoke her contractual right to arbitration as set out in paragraph 5. In construing this provision, we must give its terms their plain and ordinary

---

[2]The evidence was altogether against even this limited defense. Paragraph 1 allowed plaintiff to "reconstruct[ ]" the house to restore it to its original condition, so far as reasonably possible. Thus, the pleadings themselves refuted defendant's contention that she was not informed of this contractual right.

meaning and not render any term superfluous.. *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 2016 IL App (1st) 152662, ¶ 37. After stating, "Any controversy arising out of this contract or the business relationship between the parties shall be settled by binding arbitration," paragraph 5 states, "Either party may demand arbitration by serving upon the other written demand for arbitration." To avoid rendering the second sentence superfluous, we construe paragraph 5 to require a party who wishes to exercise her right to arbitration to make a written demand for it upon the other party.

¶ 23    The trial court correctly found that defendant never made a written demand on plaintiff for arbitration. Defendant relies on her text message of February 10, 2021. However, even if we were to treat "mediation" as synonymous with "arbitration," the text message was not a demand for arbitration. Defendant merely told Seth that he should "consider" meditation (arbitration). A suggestion is not a demand and does not put a reasonable person on notice of one. Further, she testified on redirect examination that she told Seth in the text message that she would "go to court if [he] want[ed]." She thus implied that she would *not* insist on arbitration if Seth did not choose it. Thus, the text message actually cuts against a finding that defendant invoked her right to arbitration.

¶ 24    Defendant's conduct, starting February 10, 2021, was also inconsistent with invoking her arbitration right. There is no evidence that, between February 10, 2021, and the filing of her answer, she demanded arbitration. Moreover, when defendant answered the complaint, she (1) failed to invoke her right to arbitration and (2) affirmatively sought judicial resolution of a matter arising under the contract by filing the counterclaim for specific performance of the contract. Such conduct is manifestly inconsistent with an intent to invoke the right to arbitration. See *Gateway Drywall & Decorating, Inc. v. Village Construction Co.*, 76 Ill. App. 3d 812, 816

(1979). Because the trial court's finding that defendant waived her contractual right to arbitration was not against the manifest weight of the evidence, we affirm the judgment.

¶ 25                                      III. CONCLUSION

¶ 26    For the reasons stated, we affirm the judgment of the circuit court of Brown County.

¶ 27    Affirmed.